RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0358p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*

No. 11-3341

DAVID JEREMY ZOBEL,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:09-cr-128-1—Walter H. Rice, District Judge.

Argued: April 19, 2012

Decided and Filed: October 11, 2012

Before: MOORE, GIBBONS, and ALARCÓN, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Sandra J. Finucane, Gahanna, Ohio, for Appellant. Brent G. Tabacchi, UNITED STATES ATTORNEY'S OFFICE, Dayton, Ohio, for Appellee. **ON BRIEF:** Sandra J. Finucane, Gahanna, Ohio, for Appellant. Brent G. Tabacchi, UNITED STATES ATTORNEY'S OFFICE, Dayton, Ohio, for Appellee.

GIBBONS, J., delivered the opinion of the court, in which ALARCÓN, J., joined. MOORE, J. (pp. 24–26), delivered a separate dissenting opinion.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant–appellant David Zobel

appeals his sentence for knowingly coercing and enticing a minor to engage in sexual

_____

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

activity, in violation of 18 U.S.C. § 2422(b).  After Zobel pled guilty, the district court imposed a sentence of 150 months of imprisonment, which represented a 15 month upward variance from the upper-end of the Guidelines range.  The district court also imposed several special conditions of supervised release for life, which prohibit Zobel, *inter alia*, from having contact with minors absent prior judicial approval, loitering in areas where children tend to congregate, and possessing or viewing pornography or materials that are "sexually explicit or suggestive."   Zobel argues that his sentence—both the term of incarceration and several special conditions—was both procedurally and substantively unreasonable.

For the reasons that follow, we vacate the part of the special condition that bans possessing or accessing "sexually suggestive" materials, affirm the remainder of the sentence, and remand for resentencing proceedings consistent with this opinion.

I.

Beginning in approximately December 2008, Zobel engaged in a series of sexually explicit online chats with numerous minor females from around the country. Zobel resided in Ann Arbor, Michigan, and one of those minor females, J.C., resided in Xenia, Ohio.  In January 2009, Zobel used online chatting and text messaging to persuade J.C. to perform oral sex on him.  Zobel either knew that J.C. was under sixteen years of age or recklessly disregarded  her age.  J.C. was thirteen years old.

Early in the morning on June 2, 2009, Zobel exchanged a series of text messages with J.C. in which J.C. informed Zobel that she and a friend of hers, B.B., had run away from home.  J.C. informed Zobel that B.B. was fourteen years old and "cute."  In fact, B.B. was only twelve years old.  Zobel responded: "Maybe I should drive down and get you 2 a hotel room . . . ."  J.C. replied: "[I]f you come down here [B.B.] will do whatever you want."  The two fixed a place to meet in Xenia.  Zobel then asked: "And u guys will do ANYTHING I want?"

Zobel then drove from Ann Arbor to Xenia to pick up the girls.  Zobel drove them to a parking garage in Toledo, Ohio, where he had both J.C. and B.B. perform oral

sex on him. He also took pictures of the girls posing in their bras and with their bare breasts exposed. Zobel then gave each of the girls twenty dollars and left them in the parking garage.

Shortly afterwards, Toledo police found J.C. and B.B., who stated that a man named David had picked them up in Xenia and driven them to Toledo, where he had them perform oral sex on him. Police located Zobel and obtained a search warrant for his apartment. Agents discovered that around the time that Zobel was engaging in these sexual activities with minors, he was downloading child pornography onto his home computer from the Internet. He had downloaded at least sixty-one images of child pornography onto his computer.

Zobel was charged in a five-count indictment. Count one charged Zobel with knowingly persuading and enticing J.C., a minor, to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Count two charged a violation of the same statute for enticing B.B. to engage in sexual activity. Counts three through five charged Zobel with interstate travel with intent to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b). Pursuant to the plea agreement, Zobel pled guilty to count one of the indictment and the government agreed to move to dismiss counts two through five. In his plea agreement, Zobel agreed that a sentence of imprisonment between 120 and 180 months and supervised release up to life would be appropriate. The government agreed to recommend that Zobel be sentenced within the Guidelines range, so long as the court did not calculate a total adjusted offense level of less than 31. The district court accepted Zobel's guilty plea.

The Pre-sentence Investigation Report (PSR) set an adjusted offense level of 31, with a Criminal History category of I. Given the statutory minimum sentence for Zobel's crime, this offense level yielded a Guidelines range of 120–135 months of imprisonment. The parties did not object to this calculation.

Prior to sentencing, the district court conducted a hearing at which Dr. David Roush, who had performed a psychological evaluation of Zobel for approximately six hours over two days, testified. Among other diagnostics, Roush had administered the

Static-99 test, which assists in predicting sexual and violent recidivism for sexual offenders by measuring ten risk factors. Roush added to his assessment two risk factors not present in the Static-99—Zobel's self-admitted addiction to pornography and his use of child pornography. Without these two additional risk factors, Zobel would have presented a low to moderate risk of recidivism, but with these factors, he presented a moderate to high risk of recidivism. Roush justified his addition of these two risk factors based on his twenty years of experience working with sexual offenders. Roush stated that although empirical data supported his decision to add these two risk factors, he could not cite and did not include in his report any supportive studies or research. Finally, Roush added that he was particularly concerned that Zobel, after J.C. initially told him she was sixteen years old, had researched the age of consent in Ohio and then, after he discovered that J.C. was actually underage, still engaged in sexual behavior with her and B.B.

The district court conducted a sentencing hearing two months later. At the sentencing hearing, the district court began by observing that Zobel's case was "somewhat different" in part because Zobel had "acted out against young children" while also accessing child pornography. It noted that Zobel, while not forcing himself upon the minors, had "carefully cultivated [and] . . . manipulated them." The court adopted the calculations of the PSR, agreeing that Zobel's Guidelines range was 120–135 months.

After correctly calculating the applicable Guidelines range, the district court examined a number of the 18 U.S.C. § 3553(a) factors. It recognized Zobel's need for treatment while incarcerated and considered whether Zobel's sentence would be disproportionate to those of similarly situated defendants on a national level. The court then focused on Zobel's history and characteristics and the nature and circumstances of the offense. In examining these factors, the court noted Zobel's family background, as well as his self-admitted addiction to pornography and his use of child pornography. It also observed that the crime was "horrible" in part because the minors "had issues and problems of their own"—and Zobel "t[ook] advantage of the[se] vulnerabilities."

The court then focused on "the safety of the community because in reality that's what it comes down to." In so doing, the court found that "Dr. Roush's addition of two factors to the Static-99 is not contraindicated from the standpoint of a forensic psychologist." Although the court remarked that it would have liked to have reviewed the authority upon which Roush relied to justify adding Zobel's addiction to pornography and use of child pornography as risk factors, the court did note that Roush testified "within a reasonable psychological certainty that . . . it is psychologically proper . . . to add [such] risk factors . . . ." As a result, the court concluded that "the bottom line is that [Zobel] does represent a moderate risk to the community." The court further observed that Zobel specifically researched the age of consent in Ohio and, after finding out J.C.'s true age, "still continued to engage in inappropriate sexual behavior" with both her and her friend B.B. It noted that Zobel had driven over three hours from Ann Arbor to Xenia, giving him ample time to reconsider what he had planned to do, but he instead went forward and "used these women for whatever purposes he had in mind [and] simply discarded them and went on his way."

Drawing upon all of these observations, the district court sentenced Zobel to 150 months in prison—a 15 month upward variance above the upper-end of the Guidelines range. The court also imposed a number of special conditions. Zobel now challenges both his sentence of incarceration and these special conditions as procedurally and substantively unreasonable.

## II.

Zobel argues that his 150-month, above-Guidelines sentence was procedurally unreasonable because the district court failed to adequately "explain why any of its cited reasons individually or in combination justified an upward variance." As a general matter, we review the reasonableness of a sentence under the deferential abuse-of-discretion standard. *United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010). But here, the district court, after rendering the sentence, asked Zobel's counsel if he had any further objections, and Zobel's counsel answered, "no." As a result, we review the procedural reasonableness of Zobel's sentence for plain error. *United States v. Phillips*,

516 F.3d 479, 487 (6th Cir. 2008).  For an error to be plain, Zobel "must show (1) error (2) that was obvious or clear (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *Id.* (internal quotation marks omitted).

For a sentence to be procedurally reasonable, "a district court must explain its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007) (internal quotation and editorial marks omitted).  A district court commits reversible procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).  Further, if the sentence imposed is outside the advisory range, the court is required to state "the specific reason for the imposition of" its departure or variance.  18 U.S.C. § 3553(c)(2); *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011).

As a preliminary matter, we acknowledge that the district court's written statement of reasons was sparse.  On the statement of reasons form, the judge merely checked off a box indicating that  he imposed an above-Guidelines sentence due to "the nature and circumstances of the offense and the history and characteristics of the defendant . . . ."  Standing alone, this statement of reasons would lack "the requisite level of specificity" and result in remand. *See United States v. Blackie*, 548 F.3d 395, 401–03 (6th Cir. 2008).  But although we have emphasized that a district court should reduce its reasoning to writing to comply with 18 U.S.C. § 3553(c)(2), we have "'not vacated a sentence *solely* for failure to meet the statute's written order requirement . . . .'" *United States v. Williams*, 396 F. App'x 212, 220 (6th Cir. 2010) (quoting *United States v. Poynter*, 344 F. App'x 171, 181 n.8 (6th Cir. 2009)); *see United States v. Malone*, 404 F. App'x 964, 971 (6th Cir. 2010) (Moore, J., dissenting) ("[A] failure to comply with the written-statement requirement will not result in reversible error so long as the district court provides an oral explanation for an above-guidelines sentence.").  Here, the

district court's oral explanation at the sentencing hearing was sufficient to compensate for its scant written explanation.

At the sentencing hearing, after correctly calculating the applicable Guidelines range, the district court examined a number of the § 3553(a) factors. It recognized Zobel's need for treatment while incarcerated and considered whether Zobel's sentence would present a disparity when compared nationally to the sentences of similarly situated defendants. 18 U.S.C. §§ 3553(a)(2)(D), (a)(6). The court then focused on Zobel's "history and characteristics" and "the nature and circumstances of the offense." *See id.* § 3553(a)(1). Regarding Zobel's history and characteristics, the court noted Zobel's supportive family background and musical talent, as well as his self-admitted addiction to pornography and his use of child pornography. Regarding the nature and circumstances of the offense, the court noted that Zobel pursued this "horrible" course of conduct after researching the age of consent in Ohio and knowing the victims were underage, that Zobel had ample time to reconsider going through with his actions, and that Zobel "cultivated" and "manipulated" minors who were particularly vulnerable. Perhaps most pointedly, relying upon Roush's expert testimony, the court observed that "in reality . . . what it comes down to" is "the safety of the community" and later concluded that "the bottom line is that [Zobel] does represent a moderate risk to the community." *See id.* § 3553(a)(2)(C). In providing these reasons—and in particular emphasizing Zobel's risk of recidivism and threat to the community—the district court explained its above-Guidelines sentence with a sufficient degree of specificity to survive a procedural reasonableness challenge on plain error review. *See United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (finding above-Guidelines sentence procedurally reasonable where district court "discuss[ed] the seriousness of the offense, the interest in protecting the public from future sex crimes by Klups, and the requirement of a sentence sufficient to allow for sex-offender treatment"—even though the district's court explanation for the basis of the variance contained "[s]ome ambiguity"); *United States v. Bolds*, 511 F.3d 568, 582 (6th Cir. 2007) (finding above-Guidelines sentence procedurally reasonable where district court noted "Bolds' 'consistently contumacious' conduct in failing to abide by the terms of her supervised release and the 'seriousness'

of the[] supervised release violations," the need to deter such conduct and protect the public, and "the need to provide Bolds and her child with necessary medical care"); *see also United States v. Mays*, 435 F. App'x 519, 520 (6th Cir. 2011) (*per curiam*) (finding above-Guidelines sentence procedurally reasonable where district "court gave proper consideration to the relevant § 3553(a) factors, explaining that an upward variance was warranted by 'the seriousness of the offense,' the nature of the criminal behavior . . . and the . . . 'threat of recidivism'"); *United States v. Harris*, 339 F. App'x 533, 536 (6th Cir. 2009) (finding below-Guidelines sentence procedurally reasonable but vacating on other grounds where district court's explanation, though "far from ideal[,] . . . did offer an explanation for the variance framed in terms of the § 3553(a) factors"); *United States v. Clowers*, 280 F. App'x 496, 501 (6th Cir. 2008) (finding above-Guidelines sentence procedurally reasonable where district court "demonstrated its detailed consideration of several of the § 3553(a) factors").

It would have been preferable for the district court to have directly stated on the record that it was imposing a variance. But at the sentencing hearing, the court set forth the applicable Guidelines range of 120–135 months—on which all parties agreed—and shortly thereafter imposed a sentence of 150 months. Under these circumstances, it was apparent to those present that Zobel was being sentenced to 15 months above the upper-end of the Guidelines, and we therefore find no reversible procedural error on these grounds. *Cf. United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011) (finding that sentence was procedurally reasonable even though district court repeatedly used the word "departure" instead of the word "variance" because the court's "clarifying language during oral arguments and its clear reference to § 3553(a) factors" established that the district court was indeed imposing a variance); *United States v. Branch*, 405 F. App'x 967, 968–69 (6th Cir. 2010) (finding that sentence was procedurally reasonable despite the fact that district court did not explicitly refer to the applicable Guidelines range during sentencing because the parties agreed on the range and district court was aware of it). Moreover, the district court checked the "outside the advisory sentencing guideline system" box on its Statement of Reasons form.

Although the district court did not separately state how each of its observations about Zobel's characteristics and crime—*e.g.*, Zobel's child pornography possession, the fact that he "cultivated" and "manipulated" two young victims, and most importantly the fact that he presented a public safety threat—supported the variance, we find no error because *all* of these factors supported the variance. As we have previously held, albeit in an unpublished case:

> What [defendant's] complaint comes down to, then, is whether the district court adequately explained why 12 months, rather than 10 months, was appropriate. Yet everything the court said in explaining the sentence . . . justified a 12–month sentence *and* sufficed to explain why two months above the guidelines was appropriate. Under these circumstances, the failure of the court to add an explicit coda—to the effect that all of this justified a variance of two months—does not amount to reversible error.

*Malone*, 404 F. App'x at 969. Similar to the trial court in *Malone*, here the district court laid out a number of reasons that together were sufficient to justify the 150-month sentence and the 15-month above-Guidelines variance, emphasizing in particular the public safety factor. Even if the district court's explanation can fairly be criticized for lack of specificity, it differs markedly from those we have found so threadbare or ambiguous so as to preclude meaningful appellate review. *See, e.g.*, *United States v. Barahona-Montenegro*, 565 F.3d 980, 984–85 (6th Cir. 2009) (finding district court's above-Guidelines sentence procedurally unreasonable where court "failed to explain its chosen sentence" at sentencing and, when issuing a written statement of reasons two months later, "aside from a single sentence, did not explain why the chosen sentence was appropriate" (footnote omitted)); *United States v. Johnson*, 302 F. App'x 453, 457 (6th Cir. 2008) (finding district court's above-Guidelines sentence procedurally unreasonable where its explanation provided "nothing to review—no discussion of § 3553(a) nor any other explanation"); *Blackie*, 548 F.3d at 401–02 (finding district court's above-Guidelines sentence procedurally unreasonable where it "did not refer to the applicable Guidelines range" nor provide any "specific reasons for an upward departure or variance at the time of sentencing"). Here, the district court explained "its reasoning to a sufficient degree to allow for meaningful appellate review"—the

touchstone of procedural reasonableness.  *See Brogdon*, 503 F.3d at 559 (internal quotation marks omitted).  If any error was committed, it was not plain.

III.

We now move to the substantive reasonableness of Zobel's 150-month sentence. "For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotation marks omitted).  "A sentence is substantively unreasonable if the district court 'selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.'" *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011) (quoting *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009)).  Although sentences within the Guidelines may be afforded a presumption of substantive reasonableness, a sentence outside the Guidelines is not presumed unreasonable. *Bolds*, 511 F.3d at 581.  Further, when reviewing whether an above-Guidelines sentence is reasonable, appellate courts may "take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Gall*, 552 U.S. at 47.  In reviewing a sentence, we give "'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *Bolds*, 511 F.3d at 581.  Thus, the mere fact that we "might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* (internal quotation marks omitted).  We review substantive reasonableness for abuse of discretion. *United States v. Richards*, 659 F.3d 527, 549 (6th Cir. 2011).

As a preliminary matter, we note that Zobel received an upward variance of roughly eleven percent over the 150-month upper limit suggested by the Guidelines. Although the government did not seek an upward variance and the PSR recommended a sentence of only 130 months, this variance is relatively minor when compared to others that we have previously affirmed. *See United States v. Stewart*, 628 F.3d 246, 260–61 (6th Cir. 2010) (affirming 100 percent variance); *Vowell*, 516 F.3d at 511–13 (affirming

242 percent variance).  That Zobel's variance is relatively minor matters because, "[i]n general, 'a major departure should be supported by a more significant justification than a minor one.'"  *Bolds*, 511 F.3d at 580 (quoting *Gall*, 552 U.S. at 50); *see also United States v. Stall*, 581 F.3d 276, 281–82 (6th Cir. 2009).

Zobel argues that the district court erred by considering factors already accounted for by the offense itself, improperly weighing certain factors, and taking into account inappropriate factors.  He first contends that the district court's observation that he "took advantage of the vulnerabilities" of the minors cannot justify a variance because 18 U.S.C. § 2422(b)—which prohibits a person from knowingly persuading a minor to engage in sexual activity—inherently involves taking advantage of the vulnerabilities of a minor.  Zobel is correct that all minors are, by definition, vulnerable, but the district court also explained that "these young ladies had issues and problems of their own," and that Zobel nonetheless chose to "cultivate" and "manipulate" them.  Thus, while the victims' vulnerability is not a particularly strong justification to impose a variance here, the district court did not err in considering it.

Zobel also argues that because he only persuaded the minors and did not engage in actual solicitation, his crime was "not more egregious than the minimum level of conduct necessary to secure a conviction."  In support, Zobel notes that J.C. herself asked Zobel to help them leave Ohio.  However, the point is not whether Zobel could have more aggressively persuaded or solicited J.C.; it is—as the district court noted and the plea agreement established—that Zobel cultivated and manipulated J.C. over a series of months and maintained an inappropriate sexual relationship with her.  These factors do render Zobel's crime somewhat unique and suggest that his behavior does not embody merely the minimum level of conduct necessary to secure a conviction.  Moreover, Zobel's argument that he did not engage in "undue persuasion" downplays the part that he played in arranging the illicit rendezvous: it was Zobel who initially suggested renting a hotel room for the girls, Zobel who offered to drive to Ohio and pick them up, and Zobel who, months prior, encouraged J.C. to run away.

Nor can the district court be faulted for failing to consider that civil detention, if appropriate, would provide an additional check against Zobel's recidivism upon release. *See* 18 U.S.C. § 4248. The potential use of civil commitment is not an explicit factor under § 3553(a) and Zobel did not raise this argument during sentencing. Further, the Director of the Bureau of Prisons and the Attorney General *always* have the authority to certify a sex offender as a "sexually dangerous person" and civilly commit him, a determination subject to judicial review. *See* 18 U.S.C. §§ 4247(a)(5); 4248(a). If this potential check on recidivism were enough to find Zobel's upward variance unreasonable, then nearly every upward variance would be unreasonable, because civil commitment is always a potential option.

Finally, the district court did not place undue weight upon the safety of the community in crafting Zobel's sentence. Zobel contends that emphasizing the public safety factor was problematic because the district court relied heavily upon Roush's flawed psychological assessment and testimony, which elevated Zobels' recidivism risk score by adding two risk factors—Zobel's admitted addiction to pornography and use of child pornography. He specifically objects to Roush's testimony because, on cross-examination, Roush stated that Zobel's use of child pornography could only predict his use of child pornography in the future, not necessarily his future propensity to commit sexual offenses against minors. Nonetheless, the district court had reason to find Roush credible and rely at least in part on his testimony in concluding that Zobel presented a moderate public safety risk. Roush based his expert report on his examination of Zobel and his twenty years of experience working with sexual offenders. Additionally, Zobel did not introduce any expert testimony to rebut Roush's conclusions. The mere fact that Roush's responses during cross-examination appeared to undercut somewhat his decision to include Zobel's addiction to pornography and use of child pornography as recidivism risk factors for further hands-on sexual offenses does not mean the district court abused its discretion in concluding that Roush testified "within a reasonable psychological certainty that . . . it is psychologically proper from a forensic psychologist perspective to add any other risk factors" to the Static-99 test. An expert witness's unrebutted testimony need not be flawless to be credible.

In any event, we are not convinced that the district court relied too heavily on Roush's Static-99 assessment because the district court cited other factors that contributed to its public safety analysis. For instance, the court noted that Zobel—after researching the age of consent in Ohio *and* after learning that both of the victims were minors—"still[] . . . made the choice to engage in that inappropriate behavior." It noted that this behavior was "very concerning." In so observing, the district court echoed Roush's testimony that these particular actions constituted an additional risk factor.[1] The district court also noted that Zobel had hours in which to reconsider his decision during the drive from Michigan to Ohio, and that Zobel "used these women for whatever purposes he had in mind [and] simply discarded them and went on his way." These factors, which are not elements of the offense itself, were appropriate to consider and buttressed the district court's determination that Zobel presented a public safety risk. A sexual offender who knows the law and the age of his underage victims and has ample time to reconsider, but who instead leaves his twelve and thirteen year old victims in a parking garage in an unfamiliar city, certainly presents a risk to public safety—a risk that the district court was entitled to find "moderate" and in support of the variance.[2]

The district court certainly attached significant weight to public safety concerns, but "[a] district court does not commit reversible error simply by 'attach[ing] great weight' to a single factor." *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir. 2011) (quoting *Gall*, 552 U.S. at 57). Where—as here—"a district court explicitly or implicitly considers and weighs all pertinent factors, a defendant clearly bears a much

---

[1]On this point, Zobel argues that "[w]hile a truly honest, reasonable mistake [about the victim's age] might warrant a *downward* variance, an intentional disregard (or actual knowledge) of the age of the victim, does not warrant an *upward* variance, or even a sentence at the high end of the guideline range." But even if this is true, Zobel took the time to research the age of consent and, before driving to Ohio in June 2009, knew the actual age of the victims. That Zobel had actual (as opposed to presumed) knowledge of both the law and the victims' ages was a factor that the district court could find "very concerning" and unique.

[2]Zobel contends that the district court erred in considering Zobel's own admission that he is addicted to pornography. However, Zobel has failed to provide any support for this proposition, and persuasive authority suggests that a district court may properly consider a defendant's own admission of his addiction to pornography when fashioning sentence terms. *See United States v. Kosteniuk*, 251 F. App'x 97, 98–99 (3d Cir. 2007) (upholding supervised release where defendant himself admitted to an "addiction" to pornography, "but the treatment failed to prevent his addiction from escalating"); *United States v. Dalimonte*, 188 F. App'x 931, 933 (11th Cir. 2006) (noting that defendant's "own admission that he was addicted to viewing child pornography" demonstrated, in part, the need for supervised release).

greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *Id.* (internal quotation marks omitted). Zobel has not met this burden. The district court considered all relevant § 3553(a) factors, emphasized the risk to public safety, and imposed an eleven percent variance based largely on its perception of that risk. In so doing, the district court did not abuse its discretion.

IV.

We now consider whether the imposition of special conditions of supervised release was procedurally unreasonable. Because Zobel was asked if he had any objections to his sentence and he responded, "no," we review the procedural reasonableness of the special conditions of supervised release for plain error. *See Phillips*, 516 F.3d at 487. A district court must "state in open court the reasons for its imposition of the particular sentence, including its rationale for mandating special conditions of supervised release." *United States v. Carter*, 463 F.3d 526, 528–29 (6th Cir. 2006) (internal quotation marks omitted). Although a district court must consider the factors specified in 18 U.S.C. § 3583(c) when imposing a condition of supervised release, a district court's consideration of the § 3553(a) factors sufficient to justify a term of incarceration as procedurally reasonable can also demonstrate that the imposition of special conditions is procedurally reasonable. *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007) (finding imposition of special condition procedurally reasonable where "the district court . . . engaged in a single consideration of the sentencing factors, which embraced both the incarceration sentence and the supervised release term").

In outlining its reasons for imposing the sentence of incarceration—from Zobel's risk of recidivism to the fact that he "cultivated" and "manipulated" the young victims—the district court was also outlining the reasons supporting the conditions of supervised release. The sentencing transcript reveals the district court's strong concern with protecting the public from someone who had sexually enticed minors, and barring Zobel from contacting minors and loitering where minors congregate would address this concern. Further, the district court concluded that access to pornographic materials

increased Zobel's risk of recidivism, and only a slight inference is required to conclude that, in banning these materials, the district court sought to reduce Zobel's risk of recidivism and protect the public. Thus, when the district court discussed the § 3553(a) factors and its reasons for imposing the prison sentence, it was also discussing the reasons for imposing special conditions. *See id.* These factors—of which public safety was most prominent—are "relevant" to the conditions imposed by the district court "and make the basis of its decision sufficiently clear on the record to permit reasonable appellate review." *See id.* (internal quotation marks omitted). Whether these conditions were in fact warranted is a question of substantive reasonableness, but the district court's overarching rationale in imposing them—public safety—is certainly adequate to allow for meaningful appellate review. Indeed, Zobel's case is far afield from those in which we have remanded because the imposition of special conditions was procedurally unreasonable. *See, e.g.*, *United States v. Inman*, 666 F.3d 1001, 1005–07 (6th Cir. 2012) (*per curiam*) (remanding on procedural reasonableness grounds where district court had banned defendant from consuming alcohol and required him to provide financial information to his probation officer—even though there was no evidence that defendant was addicted to alcohol and his crime was not financial in nature—and provided no reasons to justify these conditions).

## V.

We finally consider whether the special conditions of supervised release are substantively reasonable. In determining substantive reasonableness, we look to whether a condition

> (1) is reasonably related to specified sentencing factors, namely the nature and circumstances of the offense and the history and characteristics of the defendant, and the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (2) involves no greater deprivation of liberty than is reasonably necessary to achieve these goals; and

(3) is consistent with any pertinent policy statements issued by the
Sentencing Commission.

*United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997) (citing 18 U.S.C. §§ 3583(d),
3553(a)(1), (a)(2)(B)–(D); U.S.S.G. § 5D1.3(b)).  Specifically, we "must determine
whether the 'condition of supervised release is reasonably related to the dual goals of
probation, the rehabilitation of the defendant and the protection of the public.'"
*Brogdon*, 503 F.3d at 563 (quoting *Ritter*, 118 F.3d at 504).  "If the conditions are
reasonably related to these goals, they must be upheld."  *Id.*  Because Zobel did not
object to the length or conditions of his supervised release, we review for plain error.
*See Inman*, 666 F.3d at 1003.  In assessing whether the district court erred in imposing
three special conditions of supervised release, we confront two questions: (1) whether
Zobel's challenge to these specialized conditions is ripe for review; and (2) whether, on
the merits, these conditions are substantively reasonable.

A.

The government argues that Zobel's challenge to the special conditions is not
ripe for review because it is likely that Zobel will receive treatment during his 150-
month incarceration that could affect the propriety and need for imposing such
conditions.  This argument is unconvincing.

Generally, "conditions of supervised release may be ripe for appellate review
immediately following their imposition at sentence." *United States v. Lee*, 502 F.3d 447,
449–50 (6th Cir. 2007).  Nonetheless, we have occasionally found a defendant's
challenge to a supervised release condition unripe where the challenged condition was
potential, rather than mandatory.  *See id.* at 450 (challenge to supervised release not ripe
where it "implicate[d] only the *potential* use of a penile plethysmograph" and where it
was not clear whether such testing would even be employed when defendant was
scheduled to be released) (emphasis added); *United States v. Massey*, 349 F. App'x 64,
70 (6th Cir. 2009) (finding challenge to optional components of supervised release
conditions not ripe based on the "same reasoning" as articulated in *Lee*).  Here, Zobel's
conditions do not include anything akin to the potential use of a penile plethysmograph,

and indeed are not *potential* at all.  Rather, they are mandatory.  *See United States v. Lantz*, 443 F. App'x 135, 139 (6th Cir. 2011) (distinguishing *Lee* and finding challenge to special conditions ripe where "[t]he conditions imposed upon Lantz's release are not mere possibilities or options").  Nor does *United States v. Evers*, 669 F.3d 645, 662 (6th Cir. 2012), foreclose our review.  *Evers* involved a sentence much longer than the one here, included a penile plethysmograph condition not applicable here, and referred to the discretion of the probation department, which is not relevant here.  *See id.*

Accordingly, Zobel's challenge to his mandatory conditions of supervised release is ripe for review.

B.

Zobel challenges  as substantively unreasonable three of the special conditions of supervised release that the district court imposed: (1) the "no contact with minors" condition; (2) the anti-loitering provision; and (3) the prohibition on possessing or viewing pornography or sexually explicit or suggestive materials.

1. "No contact with minors" condition

The first condition that Zobel challenges bars him from having any contact with minor children under eighteen years old, even if supervised, unless he secures prior court approval.  The condition does not bar mere incidental interactions with minors.  Zobel argues that this condition is a greater deprivation than is necessary to effect the goals of sentencing because seeking judicial approval prior to having even supervised contact with minors could affect his ability to earn a living as a self-employed musician who depends on teaching and performing music.

We have rejected arguments similar to Zobel's in the past.  In *United States v. Lay*, 583 F.3d 436, 440 (6th Cir. 2009), the defendant pled guilty to traveling in interstate commerce with the intent to engage in sexual activity with a minor, in

violation of 18 U.S.C. § 2423(b), a crime no more serious than Zobel's.[3]  Nonetheless, the district court imposed a condition that barred the defendant from "hav[ing] any contact with any person under the age of 18, unless his or her parent or legal guardian is present or [the defendant] notifies the parent or guardian about his conviction."  *Id.* at 456 (Merritt, J., dissenting).  We upheld this significant condition on grounds that it was "designed to protect the public from potential recidivism."  *Id.* at 450 (majority opinion).  Here, the district court explained that Zobel's sentence was largely based on "the safety of the community" and Zobel's moderate risk of re-offending.  Because Zobel enticed two minors to perform sexual acts, this condition—which restricts his access to minors—is "reasonably related to the . . . protection of the public" and therefore "must be upheld."  *See Brogdon*, 503 F.3d at 563 (internal quotation marks omitted).

Zobel further argues that this condition would restrict his ability to have contact with his *own* children, should he one day become a father.  We have recognized "that parents have a fundamental liberty interest in the custody of their children," *Eidson v. Tenn. Dep't of Children's Srvs.*, 510 F.3d 631, 635 (6th Cir. 2007), but we have not decided the precise challenge that Zobel raises here.  However, the Eighth and Third Circuits have reached different conclusions on this issue.  *Compare United States v. Kerr*, 472 F.3d 517, 523 (8th Cir. 2006) (upholding no-contact provision on grounds that "because [defendant] is childless, he is not restricted from contacting his own children"), *with United States v. Loy*, 237 F.3d 251, 270 (3d Cir. 2001) (finding no-contact provision constitutionally problematic if interpreted to extend to childless defendant's future children and thus interpreting provision narrowly not to apply to defendant's own potential offspring).  This split of authority relieves us from resolving Zobel's challenge because, even if the district court's imposition of this condition was in error, "the very existence of a reasonable disagreement on this point precludes the conclusion that the error was plain."  *United States v. Madden*, 515 F.3d 601, 608 (6th Cir. 2008); *United*

---

[3]Indeed, the crime committed in *Lay* was arguably *less* serious than Zobel's.  In *Lay*, the defendant pled guilty to 18 U.S.C. § 2423(b), which carries no statutory minimum sentence, whereas Zobel pled guilty to 18 U.S.C. § 2422(b), which carries a mandatory minimum sentence of ten years.

*States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995) (holding that a "circuit split precludes a finding of plain error"). Moreover, should this condition become too onerous for Zobel in the future, he remains free to petition the district court to modify it. *See* 18 U.S.C. § 3583(e)(2).

## 2. Anti-loitering condition

Zobel also objects to the anti-loitering provision, which states that "the defendant shall be prohibited from loitering where minors congregate, such as playgrounds, arcades, amusement parks, recreation parks, sporting events, shopping malls, swimming pools, etc." Zobel argues that the condition is unconstitutionally vague and that it does not clearly advance the goals of rehabilitation, deterrence or public safety. Neither argument is compelling.

First, provisions that include anti-loitering language have withstood vagueness challenges. *See United States v. Oliphant*, 456 F. App'x 456, 458–59 (5th Cir. 2012) (upholding against vagueness challenge condition stating that defendant "shall not have access to or loiter near school grounds, parks, arcades, playgrounds, amusement parks or other places where children by [sic] frequently congregate"); *United States v. Burroughs*, 613 F.3d 233, 246 & n.3 (D.C. Cir. 2010) (upholding against vagueness challenge condition barring defendant from "loiter[ing] in any place where children congregate"). The anti-loitering provision here is extremely similar to the provisions our sister circuits have upheld, and is not "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *See Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007) (internal quotation marks omitted).

Second, because Zobel was convicted of sexual enticement of a minor, prohibiting Zobel from loitering near places where children congregate is reasonably related to the goal of public safety. Even defendants whose crimes involved no physical contact with minors have been bound by anti-loitering provisions like the one here. *See United States v. Rearden*, 349 F.3d 608, 620 (9th Cir. 2003) (shipping child

pornography); *United States v. Ristine*, 335 F.3d 692, 696–97 (8th Cir. 2003) (receiving child pornography).  Thus, it was not plain error to impose an anti-loitering condition.

   3. No possession of pornography or sexually explicit or suggestive materials
      condition

Finally, Zobel contends that the condition barring him from possessing pornography or sexually explicit or suggestive materials is unconstitutionally vague and overbroad.  The condition reads in full:

> The defendant shall not possess or view pornography of any kind. The defendant shall not view, listen to, or possess anything sexually explicit or suggestive, including, but not limited to, books, videos, magazines, computer files, and internet sites.

"As the Supreme Court recently observed, vagueness and overbreadth are distinct concerns, the first implicating the Due Process Clause and the latter the First Amendment."  *United States v. Farhane*, 634 F.3d 127, 136 (2d Cir. 2011) (citing *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2719 (2010)).  Regarding vagueness, it is well established that "'[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 551 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1925)).  These same principles apply to a condition of supervised release.  *Loy*, 237 F.3d at 262; *United States v. Schave*, 186 F.3d 839, 843 (7th Cir. 1999).

We first consider the parts of this provision that ban "pornography" and "sexually explicit" materials and then consider the part that bans "sexually suggestive" materials.

a.

The circuits are divided as to whether bans on "pornography" or "pornographic materials" are unconstitutionally vague, and thus we cannot find plain error for imposing such a ban here.  *See Lantz*, 443 F. App'x at 140–41 (listing cases and noting it would

be inappropriate to find plain error given the circuit split). Nor can we disturb on vagueness grounds the ban on "sexually explicit" materials. The phrase "'sexually explicit material' is a narrower category of material than 'pornography,'" *United States v. Thompson*, 653 F.3d 688, 695 (8th Cir. 2011), in part because "sexually explicit conduct" is specifically defined under federal law, *see* 18 U.S.C. § 2256(2)(B). And since a ban on the broader category of "pornography" must withstand plain error review on a vagueness challenge, then so too must a ban on the narrower category of "sexually explicit" material.

We are also unpersuaded that the condition banning "pornography" and "sexually explicit" materials is overbroad as applied to Zobel. Bans on explicit material involving adults certainly raise First Amendment implications, *United States v. Thielemann*, 575 F.3d 265, 272 (3d Cir. 2009), and are thus "subject to careful review," *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997). However, as long as these bans are "primarily designed to meet the ends of rehabilitation and protection of the public, they are generally upheld." *Id.*

Zobel contends that this condition is overbroad because it is not reasonably related to the objectives of sentencing. But because the district court did not abuse its discretion in considering Zobel's addiction to pornography a risk factor that increased his likelihood of recidivism, *see* Part III, *supra*, it did not commit plain error in banning the possession of such materials on grounds that doing so would decrease Zobel's likelihood of recidivism. Indeed, Zobel appears to admit that the ban would decrease his likelihood to reoffend, but argues that his "chances of reoffending are not proportionally decreased" by the ban. However, a condition need not be perfectly proportionate to the objectives it seeks; it must only be "*reasonably related*" to specified sentencing factors and "involve[] no greater deprivation of liberty than is *reasonably necessary*" to achieve the goals of sentencing. 18 U.S.C. § 3583(d)(1)–(2) (emphases added).

And while we recognize that Zobel was not convicted of a crime involving child pornography, the paradigmatic case in which these bans are imposed, the question is not whether we would impose the same sentence; it is whether the district court committed

plain error.  Roush, the government's expert, included Zobel's self-admitted addiction to pornography as a recidivism risk factor.  Despite the fact that Roush downplayed on cross-examination the connection between pornography and hands-on sexual offenses, he provided an analysis and report that the district court ultimately found convincing and credible.  As a result, there is evidence on the record of a specific nexus between Zobel's addiction to pornography and his risk of recidivism.  Tellingly, appellate courts have generally struck down bans on possessing adult pornography only where the record failed to indicate *any* nexus between the condition and the goals of supervised release.  *See United States v. Perazza-Mercado*, 553 F.3d 65, 76 (1st Cir. 2009) (striking down ban on possessing pornography in child sex abuse case where "[t]here was no suggestion in the PSR or at sentencing that appellant had abused or even possessed pornography in the past, much less that it contributed to his offense or would be likely to do so in the future"); *United States v. Voelker*, 489 F.3d 139, 153 (3d Cir. 2007) (striking down lifetime ban on possession of sexually explicit materials in child pornography case and remanding where "the [district] court once again failed to provide an analysis or explanation to support this broad restriction").  Although the nexus here may not be as strong as in other cases, *see, e.g.*, *Thielemann*, 575 F.3d at 274, because the district court relied upon the connection that Roush drew between Zobel's pornography addiction and his risk of recidivism, its ban on "pornography and "sexually explicit" materials was "primarily designed to meet the ends of rehabilitation and protection of the public" and must therefore be upheld on plain error review.  *See Ritter*, 118 F.3d at 504.

b.

Nonetheless, we vacate the part of this condition that bans materials that are merely "sexually suggestive."  This part of the condition is facially overbroad.  The word "suggestive" means "giving a suggestion or hint."  Webster's Third New International Dictionary 2286 (unabridged ed. 1981).  Thus, this condition would bar Zobel from possessing or viewing anything containing a mere hint or suggestion of sex—an extremely wide prohibition that, in today's society, would extend to a host of both high-brow and mainstream literature, art, music, television programs, and movies.  In *Lantz*,

we recently struck down on plain error review a very similar condition that purported to ban any material that "alludes to sexual activity." 443 F. App'x at 141. As we explained:

> Not only would such a ban [on possessing materials that allude to sexual activity] prohibit the defendant from reading significant parts of the Old Testament—Proverbs 7, The Song of Solomon, and II Samuel 11 come immediately to mind—it would encompass an enormous swath of literature, music, and other media. Indeed, [the defendant] arguably could not possess even a television—which broadcasts sexual allusion in everything from afternoon soap operas through prime time "drama"—or a radio—which subjects listeners to such things as annoyingly persistent advertisements for "male enhancement" products.

*Id.* The same logic applies here. Bans on "sexually suggestive" materials and those that "allude to sexual activity" are equally capacious and thus equally problematic. As in *Lantz*, the ban on "sexually suggestive" materials cannot survive plain error review because the error is "clear and obvious; it affects substantial First Amendment rights to receive information and to freely exercise religion; and it calls into question the fairness of the proceedings because of the severity of the restriction." *Id.* (internal citations omitted). Thus, we vacate the part of this condition that bans Zobel from possessing or viewing materials that are merely "sexually suggestive."

## VI.

For the foregoing reasons, we vacate the part of the special condition that bars Zobel from viewing, listening to, or possessing anything that is "sexually suggestive." However, we affirm the judgment of the district court in all other respects and remand for proceedings consistent with this opinion.

——————————

**DISSENT**

——————————

KAREN NELSON MOORE, Circuit Judge, dissenting.  A district court must state in open court and in a written statement of reasons the specific reason it is imposing an outside-guidelines sentence on a defendant.  18 U.S.C. § 3553(c)(2).  Because the district court failed to state a specific reason for its fifteen-month upward variance both in open court and in its written statement of reasons, the district court committed plain error.  The majority, however, nonetheless affirms.  I respectfully dissent.

Section 3553(c)(2) imposes three procedural requirements in conjunction with the imposition of a sentence outside the guidelines range:

> The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence . . . is outside the range . . . , the specific reason for the imposition of a sentence different from that described [in the guidelines], which reasons must also be stated with specificity in a statement of reasons form . . . .

§ 3553(c)(2).  It is not in dispute that the district court failed to state in open court a specific reason for the fifteen-month variance or even that it was imposing a variance.  It is further undisputed that the post-sentencing written statement of reasons also failed to identify a sufficiently specific reason for the stated variance.

Failure to adhere to these procedural requirements is a significant procedural error.  *Gall v. United States*, 552 U.S. 38, 51 (2007) (explaining that on review, an appellate court "must first ensure that the district court committed no significant procedural error, such as . . . failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range"); *United States v. Blackie*, 548 F.3d 395, 400–01 (6th Cir. 2008) ("A sentence imposed without complying with the requirements of § 3553(c) constitutes error.").  As we have explained before, "[t]hese requirements are more than mere administrative burdens or meaningless formalities, but rather assure that the court has properly calculated the

applicable Guidelines range, and that adequate explanation is provided to allow for meaningful appellate review and the perception of a fair sentence." *Blackie*, 548 F.3d at 401.

By failing to adhere to two of the three § 3553(c) requirements, the district court has precluded us from reviewing whether it relied upon a specific reason and whether invocation of this reason in imposing a variance is supported by the record. Our inability to engage in a meaningful review of the imposed sentence is illustrated by the majority's guesswork in this portion of its opinion. Although it may be true that all of the § 3553(a) factors supported the fifteen-month variance, as is asserted by the majority, whether this was the basis for the given variance is nothing more than speculation. The district court could have relied upon any number of the § 3553(a) factors discussed at Zobel's sentencing hearing in imposing his sentence, not to mention the universe of potential unenumerated or improper reasons. As admitted by the majority, the written statement of reasons, in which the district court merely checked the box for two broad § 3553(a) factors, does not clarify the reasons on which it relied for the upward variance. In addition to precluding meaningful appellate review, the district court's errors create difficulties for the defendant. When a court fails to adhere to these procedural requirements, a defendant leaves his sentencing hearing unable to discern why he has received a particular sentence, and, as in Zobel's case, when this error is not corrected, he will never attain such clarity.

Moreover, this court has found plain error in a case with material facts that are indistinguishable from those at hand. In *Blackie*, we determined that the district court did not provide a specific reason for its outside-guidelines sentence when it failed to state expressly that the sentence was outside the guidelines range and to give a specific reason for the variance. *Blackie*, 548 F.3d at 401. Further, because the district court's written order merely identified its reasons for classifying the sentence as "above the advisory guideline range" by checking two boxes and declining to justify its reasoning in the allotted space, we found that it lacked the requisite specificity. *Id.* We then concluded that "[g]iven the *clarity* of § 3553(c)(2), the district court *plainly* erred when

it did not refer to the applicable Guidelines range and failed to provide its specific reasons for an upward departure or variance at the time of sentencing or in the written judgment and commitment order." *Id.* at 401–02 (emphasis in original).

The majority in this case attempts to distinguish *Blackie* by pointing to the fact that in Zobel's sentencing hearing, the district court referenced the applicable guidelines range and engaged in an analysis of the § 3553(a) factors. These facts, however, are immaterial to the issue raised on appeal. Instead, these facts establish the already undisputed proposition that the district court properly effectuated the first of the three requirements under § 3553(c). The district court's completion of one requirement, however, does not cure its failure to comply with the others, as a general discussion of the § 3553(a) factors neither allows an appellate court to engage in meaningful review of the variance nor promotes the perception of a fair sentence.

Even more grievous, though, than relying upon a broad discussion of the § 3553(a) factors to establish the specific reason for a variance is the majority's insistence that a procedurally deficient document can cure a procedurally deficient sentencing hearing. Specifically, the majority contends that the written statement of reasons, which "[s]tanding alone, . . . would lack the requisite level of specificity and result in remand," can fill the gaps left open by the district court at the sentencing hearing that "can fairly be criticized for lack of specificity." Majority Op. at 6, 9 (internal quotation marks omitted). When a district court fails to adhere to significant procedural requirements at two distinct stages of a sentencing, there are two bases for plain error. The majority's conclusion—that one procedural error would result in plain error, yet two procedural errors produce a procedurally reasonable sentence—defies logic.

The district court committed plain error when it did not comply with the § 3553(c)(2) requirements that it state in open court and in its written statement of reasons the specific reason for imposing an outside-guidelines sentence. I would vacate and remand for resentencing, and, therefore, I respectfully dissent.