NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0510n.06

No. 19-1406

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 10, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| WILLIAM F. GAMBLE, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

BEFORE:    SUTTON, KETHLEDGE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  William Gamble pled guilty to illegally possessing a firearm in violation of 18 U.S.C. § 922(g). He was sentenced to 68 months imprisonment followed by three years of supervised release.  After Gamble was released from prison, he twice violated the terms of his supervised release. The court eventually revoked Gamble's supervised release and imposed a 10-month sentence. Gamble appeals this sentence, claiming it is procedurally and substantively unreasonable.  Finding no reversible error, we **AFFIRM** Gamble's sentence.

## I.  BACKGROUND

In July 2018, while Gamble was on supervised release, he had an altercation with his then-girlfriend, Dedrea Perry.  Perry was pregnant with Gamble's child at the time of the incident.  Perry reported to the police that Gamble hit her on the head with a bottle.  The police observed that the left side of Perry's forehead was swollen, and that Perry had bruising and cuts the size of a dime

on her right breast. Gamble denied hitting Perry, claiming that she sustained her injuries because she was drunk, attacked him, and stumbled and fell. Gamble was arrested on a state domestic-violence charge, but the state ultimately dismissed the charge because Perry refused to testify. When the district court overseeing Gamble's supervised release held a violation hearing on the altercation, Gamble admitted to violating the terms of supervised release by excessively drinking alcohol but denied committing a domestic-violence-based violation. Because the state had dismissed the domestic violence charge, the domestic-violence-based supervised release violation was also dismissed.

The district court adjourned sentencing on the excessive-use-of-alcohol violation for 60 days to give Gamble another opportunity to comply with the terms of supervised release and warned him not to contact or threaten Perry. The court formalized that instruction by adding a special no-contact condition to the terms of Gamble's supervised release. It advised Gamble that if he failed to comply with this no-contact condition or the requirement that he not drink excessively, he would "be in jail real fast."

Gamble complied with his release conditions for the next two months while living at a halfway house. Because Gamble was set to be released from the halfway house within a week of the continued supervised release violation hearing, the court there again continued sentencing on Gamble's earlier excessive-drinking violation, "[j]ust to make sure that" Gamble was "able to integrate himself into society without any further violent behavior." Gamble was reminded that he still must not contact Perry. At a hearing a month later, no further incidents were reported and the court sentenced Gamble to one day time served and three months of supervised release for the excessive-drinking violation. The court reminded Gamble not to "show up" at Perry's home

although it acknowledged that Gamble would need to be in contact with Perry in a "civil and peaceable manner" to be involved in his child's life.

On the evening after this latest hearing, Perry called the police and reported that Gamble had assaulted her. Perry claimed that Gamble grabbed her by the neck and slammed her to the ground repeatedly. A few weeks later Perry called the police again, claiming that Gamble had hit her several times. Then a week later police responded to Perry's house again after she reported that he had slapped her in the face and choked her. The police found Gamble sleeping in a bed at Perry's residence and arrested him.

Following Gamble's arrest, the district court held a supervised release revocation hearing. At the hearing, Gamble explained that he had been at Perry's residence to exchange custody of their daughter. According to Gamble, Perry could not drive to the police station where they typically met for custody exchanges because she was intoxicated. Gamble claims Perry asked him to drop their daughter off at her house, and he did. When he arrived, Perry asked him to stay with the children while she got some rest, which Gamble agreed to do. Gamble pleaded guilty to violating both the court's no-contact order and his probation officer's no-contact instructions but denied other wrongdoing.

Both violations were Grade C violations under U.S.S.G. § 7B1.1(a)(3), and without objection the court scored the advisory sentencing guidelines range for the violations as six to twelve months. Defense counsel urged the court to impose a sentence of six months, to be served in a halfway house where Gamble could maintain his employment. A longer sentence could not be served at a halfway house, and in counsel's view, steady employment would deter any future violations and ensure that Gamble could see to his responsibilities as a father.

The court explained its view that the violations were "serious" and made "even more serious" by the context that the court had specifically explained to Gamble at the prior hearings that "if you want to keep your job, if you want to keep your freedom, then just stay away" (i.e. comply with the court's no-contact order). The court discussed Gamble's "history and characteristics," noting that Gamble's underlying conviction involved a firearm, and that the violations involved reports of violence. The court observed, "[t]here's a need to reflect the seriousness of this offense, promote respect for the law and protect the public from further crimes of this defendant."

A 10-month, within-guidelines sentence, followed by a 90-day period of supervised release was imposed. After the court rendered the sentence, it asked whether there were "any objections to the sentence just pronounced that [had] not previously been raised." Defense counsel did not raise any additional objections.

## II.     ANALYSIS

We review sentences under the abuse-of-discretion standard. *United States v. Walters,* 775 F.3d 778, 781 (6th Cir. 2015) (citing *Gall v. United States,* 552 U.S. 38, 41 (2007)). "To determine whether a district court abused its discretion, we look to whether the sentence is reasonable." *Id.* (citing *Gall,* 552 U.S. at 46). "Sentences must be both procedurally and substantively reasonable." *Id.* (citing *Gall,* 552 U.S. at 51).

### A.     Procedural Reasonableness

When, as here, after rendering a sentence, a district court asks counsel if they have objections and counsel fails to raise any, we review challenges to the sentence's procedural reasonableness for plain error. *United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012). A sentence is procedurally unreasonable if the district court commits a significant procedural error such as "failing to consider the § 3553(a) factors." *Gall*, 552 U.S. at 51. The relevant § 3553

factors include: the nature and circumstances of the offense, the need for deterrence, the defendant's history and characteristics, the types of sentences available, any sentencing guideline range, guideline policy statements, and avoidance of unwarranted disparities. 18 U.S.C. § 3553(a); *United States v. Webb*, 30 F.3d 687, 689 n. 2 (6th Cir. 1994) (quoting *United States v. Scroggins*, 910 F.2d 768, 770 (11th Cir.1990)).

Gamble contends that the court failed to consider the nature and circumstances of the offense, the defendant's history and characteristics, and the types of sentences available. However, the court considered the nature and circumstances of Gamble's violations when it noted that the violations were "serious," especially given the reports of violence and the court's previous warnings to Gamble that supervised release may be revoked if he did not comply with the court's no-contact order. The court also considered Gamble's history and characteristics when it explained its concern regarding the relationship between Gamble's underlying firearm conviction and the pending violations, which involved reports of violence. Finally, the court addressed the types of sentences available when it considered defense counsel's request that it impose a sentence that would allow Gamble to maintain his employment and provide for his children; defense counsel argued that a sentence longer than six months could not be served at a halfway house and would cause Gamble to lose his employment. The court explained that it had previously warned Gamble, "if you want to keep your job, if you want to keep your freedom," then he needed to comply with the court's no-contact order. Although defense counsel argued that deterrence could best be achieved through allowing Gamble to maintain steady employment and see to his parenting responsibilities while living at a halfway house, the record reflects that these obligations had not successfully deterred Gamble from violating the court's orders in the past.

Ultimately, the district court adequately considered the relevant § 3553(a) factors and imposed a sentence that was procedurally reasonable.

### B.        Substantive Reasonableness

We next consider whether Gamble's sentence is substantively reasonable.  Substantive reasonableness is distinct from procedural reasonableness, and focuses on "whether the sentencing court gave reasonable *weight* to each relevant factor." *United States v. Boucher*, No. 18-5683, --- F. 3d ---, 2019 WL 4252114, at *3 (6th Cir. Sept. 9, 2019) (emphasis in original).  A sentence is substantively unreasonable if a district court "placed too much weight on some of the §3553(a) factors and too little on others." *Id.*  To be sure, sentences that fall within a defendant's guidelines range are presumed reasonable, and a district court's decision to assign more or less weight to a given factor is "a matter of reasoned discretion, not math." *Id.* at * 4 (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).  If a district court gives reasonable weight to each relevant factor, the fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." *Gall,* 552 U.S. at 51.

Gamble argues that his within-guideline sentence is substantively unreasonable because a 10-month term of imprisonment is disproportionate to the violations Gamble committed and improper given Gamble's efforts to maintain employment and provide for his children.  Gamble's sentence is within the guideline range, so it is presumptively reasonable.

The court's decision to view Gamble's violations as "serious," especially in the context of its prior warnings and Gamble's prior offenses, was also within its "reasoned discretion." *Boucher*, --- F.3d. ---, 2019 WL 4252114, at *4.  Gamble violated the court's no-contact order after a warning that such a violation would be taken seriously by the court and could lead to Gamble's imprisonment, thus impacting his employment.  Although Gamble denied being violent with Perry, the court expressed concern that Gamble's underlying conviction involved a firearm offense and

Gamble's violations involved reports of violence.  The district court's decision to assign greater weight to the need to reflect the seriousness of Gamble's offense, promote respect for the law and protect the public from further crimes, and less weight to Gamble's efforts to maintain employment and provide for his children was therefore within reason.  Though another judge might reasonably have concluded that a different sentence was appropriate, that is insufficient to justify reversal because the court placed reasonable weight on the relevant § 3353(a) factors.

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** Gamble's sentence.