NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0119n.06

No. 25-5488

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| MOHAMMED AL-ABADI, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

FILED
Mar 10, 2026
KELLY L. STEPHENS, Clerk

Before:  GILMAN, KETHLEDGE, and HERMANDORFER, Circuit Judges.

KETHLEDGE, Circuit Judge.  Mohammed Al-Abadi pled guilty to two charges of selling and shipping counterfeit airbags.  He now challenges the reasonableness of his sentence.  We reject his arguments and affirm.

I.

In December 2020, a Customs and Border Patrol officer inspected a package shipped from China to an auto shop in Memphis; in the package, he found more than two dozen counterfeit Honda airbag covers.  Federal officers and state police began an investigation, and soon learned that, over the past year, nearly 40 packages had been shipped from China to the shop.  In January 2021, the police arranged for the package inspected by the CBP officer to be delivered to the shop.  When one of the shop's employees—Al-Abadi—came to collect the package, the police detained him.  He eventually admitted that he had for some time been making airbags in his house and selling them on eBay.

Police then searched Al-Abadi's house, where they found hundreds of airbag components and hundreds of shipping receipts for airbags already sold—including a FedEx receipt that showed he had shipped an airbag (an explosive device) on a plane without declaring it as dangerous. Police also reviewed his eBay records, which showed that, from 2017 to 2021, Al-Abadi had sold more than 500 airbags for nearly $200,000.

A grand jury later indicted Al-Abadi for trafficking in counterfeit motor vehicle airbags, in violation of 18 U.S.C. § 2320, and for recklessly transporting hazardous materials, in violation of 49 U.S.C. § 46312. He pled guilty. At sentencing, Al-Abadi admitted, for purposes of a sentencing enhancement, that his counterfeit sales had inflicted a loss of between $95,000 and $150,000. The district court calculated Al-Abadi's guidelines range as 18 to 24 months, and the court sentenced him to 24 months in prison. The court also imposed a two-year term of supervised release, which included, as relevant here, four special conditions: that he allow his house, computer, and other effects to be searched; that he notify, as directed by his probation officer, third parties of the risk in associating with him; that he disclose all his financial information to the officer; and that he obtain the officer's approval before opening a new line of credit. This appeal followed.

II.

We review both the procedural and substantive reasonableness of Al-Abadi's sentence for an abuse of discretion. *See United States v. Roper*, 161 F.4th 430, 434 (6th Cir. 2025).

Al-Abadi challenges the procedural reasonableness of his sentence on two grounds. He first argues that the district court failed to explain adequately why it chose the sentence it imposed. To that end, a judge need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018) (citation omitted).

Here, Al-Abadi admits that the court discussed his repeated sales of counterfeit airbags—which, the court said, posed a "great danger" to the public and showed on Al-Abadi's part a "lack of respect for the law," "a lack of judgment," and "an indifference to the welfare and safety of others." The court also cited the need to deter conduct like Al-Abadi's, and to protect the public from it. And the court credited some of Al-Abadi's arguments in mitigation, including that he had no prior convictions and had a lengthy history of employment. But the court concluded that, "because the defendant's conduct posed a great danger to the public, and general deterrence against such conduct remains very important, really, only a guideline sentence can impose a punishment that is just here." Thus, the court adequately explained its reasoning—both as to Al-Abadi's term of imprisonment and as to the conditions of his supervised release. *See United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012).

Al-Abadi also argues that the district court relied on clearly erroneous facts. He first contends that the court found that he had sold more counterfeit airbags than the government proved he had sold. But the district court did not accept the government's assertion that every airbag Al-Abadi sold on eBay was counterfeit, which itself refutes his argument to some extent. Instead, the court declined to state the exact number of counterfeit airbags sold, though the court implied the number was large. Moreover, Al-Abadi admitted that he had sold at least $95,000 worth of airbags for between $100 and $725 each. Ample evidence thus supported the district court's finding that Al-Abadi had sold many counterfeit airbags—and on the record here, likely several hundred.

Al-Abadi also contends that the district court found that more of the airbags were defective than the government had proved to be defective. But the court did not find that any particular number were defective; it instead referred only to the many "potential victims" of Al-Abadi's conduct, given the large number of counterfeit airbags he had sold. On that point, Al-Abadi

admitted that three of the airbags he had sold were tested, and all three were shown to be defective. Moreover, a car manufacturer submitted testimony that counterfeit airbags are almost always dangerous because they rarely undergo safety testing necessary to ensure their compliance with federal safety standards. On this record, then, the district court did not clearly err in finding that many—if not all—of the airbags that Al-Abadi sold were defective.

Al-Abadi also challenges the substantive reasonableness of his sentence on two grounds. First, he contends that, in selecting Al-Abadi's (within-guidelines) term of imprisonment, the district court overemphasized the fact that the airbags were defective—because, Al-Abadi says, only "a few" were shown to be so. As explained above, however, the court did not err in finding otherwise; and the court had good reason to emphasize the danger that Al-Abadi's conduct posed to the public when it weighed the relevant sentencing factors. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

Second, Al-Abadi contends that the special conditions of his supervised release—the search condition, the third-party risk-notification condition, and the two financial conditions—are neither reasonably related to the relevant sentencing factors under §3583, nor tailored to infringe on his liberty no more than necessary to achieve the goals of that section. *See Zobel*, 696 F.3d at 573. But all those conditions are tailored to prevent the harms shown in this record—that for more than four years Al-Abadi assembled, inside his house, tens of thousands of dollars of counterfeit airbags, and then sold them to unsuspecting customers over the internet. The court thus did not abuse its discretion in imposing the conditions.

The district court's judgment is affirmed.