BRIGHT, Circuit Judge,
dissenting.
I concur with respect to the majority’s decisions concerning the district court’s evidentiary rulings on attorney-client privilege and expert testimony. But I dissent as to Spencer’s sentence in order to express my view that the district court’s mere mention of the § 3553(a) factors, without more, gives insufficient support for the sentence. I also express my dissatisfaction with the current state of the guidelines system and urge the district judge in this case and district judges in this Circuit to assist the appeals court by providing an analysis of the § 3553(a) factors in support of every sentence.
I. Absence of Explanation under § 3553(a)
The guidelines gave Spencer a base-offense level of 7, and then proceeded to add 20 levels for causing $7,874,089.21 in losses and 12 levels for a variety of other enhancements to reach a total offense level of 39.[3] With that offense level and no criminal history points, the guidelines called for a sentence between 262 and 327 months in prison (21 years, 10 months to 27 years, 4 months). However, the sentencing judge departed downward significantly and sentenced Spencer to 125 months in prison (10 *325 years, 5 months). The judge offered a brief explanation for the departure:
Now, the reasons for this sentence are, the Court finds that the sentence imposed is appropriate and reasonable in light of the considerations set forth in 18 United States Code, Section 3553(a). The Court has taken into account the nature and circumstances of the instant offense, as well as the history and characteristics of the defendant and the need to avoid unwarranted sentence disparities, and finds that the sentence is sufficient, but not greater than necessary, to afford adequate deterrence to future criminal conduct.
Sentencing T. 124.
The fraud guidelines have been heavily criticized because they no longer provide a reasonable starting point for sentencing. See Brief for Wash. Legal Found, and Criminal Law Scholars as Amici Curiae Supporting Petitioner at 20-21, Rubashkin v. United States, — U.S.-, 133 S.Ct. 106, 184 L.Ed.2d 233 (2012). Adjustments based on the amount of loss lead to astronomical sentences that have little connection to criminality. Frank O. Bowman, III, Nothing is Not Enough: Fix the Absurd Post-Booker Federal Sentencing System, 24 Fed. Sent’g Rep. 356, 360 (2012) (stating that the guidelines for white-collar crimes are universally recognized as “so high as to be practically worthless”). The much-below guidelines sentence imposed on Spencer suggests that the guidelines simply did not apply here. No reasonable judge would have imposed a sentence of over 20 years. Spencer had zero criminal history points. But even if the guidelines should not apply to a particular offender and his crime, a sentencing judge should not have unlimited discretion to impose a sentence without some proper basis. A sentencing judge should be guided by § 3553(a). In order to adequately review a sentence, we need the sentencing judge to perform an analysis under § 3553(a) and to explain this analysis on the record. Here, we do not know which § 3553(a) factors the sentencing judge relied on. Saying simply, “This sentence is appropriate under § 3553,” is no different than an opinion stating “I hold for Party A because my findings are in his favor.”
A sentencing judge is required to consider all of the § 3553(a) factors and “make an individualized assessment based on the facts presented.” Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). “Booker and § 3553(a) thus demand that federal sentencing judges exercise reasoned judgment by filtering the Guidelines’ advice through the provisions of § 3553(a).” Douglas A. Berman, Reasoning Through Reasonableness, 115 Yale L.J. Pocket Part 142, 142 (2006). After making a sentencing decision, the district court “must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.” Gall, 552 U.S. at 50, 128 S.Ct. 586. The analysis should not be a boilerplate recitation of the statute but should explain the sentence in terms of the defendant who is before the judge.
In Rita, the Supreme Court emphasized the importance of a district court’s explanation of a sentence under § 3553(a). Rita v. United States, 551 U.S. 338, 358-59, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The Supreme Court noted that “a statement of reasons is important” because “[b]y articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve.” Id. at 357, 127 S.Ct. 2456. The Supreme Court found that the sentencing judge had sufficiently *326 explained the sentence imposed although the sentencing judge stated only that the sentence was appropriate. Id. at 359, 127 S.Ct. 2456. But that brief statement would not be sufficient in this case in which the amount of loss steered the sentence to an unusually harsh guidelines range for an offender with no criminal history. A brief statement may have been appropriate in Rita because the sentence imposed was within the guidelines range. Id. at 358, 127 S.Ct. 2456. However, a significant departure, such as the one in this case, merits further explanation.
A district court is not required to provide “a mechanical recitation of the § 3553(a) factors when determining a sentence.” United States v. Feemster, 572 F.3d 455, 461 (8th Cir.2009) (quotation omitted). However, I believe the converse is also true — a mechanical recitation that the sentence complies with the requirements of § 3553(a) is insufficient. It is impossible for an appellate court to meaningfully review a sentence without the underlying rationale. This is especially true in areas like fraud, where the guidelines have been consistently and repeatedly disregarded by sentencing judges.
The majority concludes that the sentencing judge said enough. I disagree. See United States v. Zobel, 696 F.3d 558 (6th Cir.2012) (Moore, J., dissenting) (explaining that § 3553 requires district courts to state their reasons for imposing an outside-guidelines sentence and that failing to do so precludes meaningful appellate review). In my view, it was insufficient for the sentencing judge to state only that he made the requisite considerations and took into account the statutorily mandated factors. There is no way to tell how the judge weighed the factors and ultimately why he chose Spencer’s sentence.
Here, the district court properly disregarded the guidelines as a proper measure of the sentence. The defendant in this case, who was guilty of fraudulent conduct in many real estate transactions, made mistakes. But with zero criminal history points, by any realistic assessment, his mistakes in no way merited a sentence of over 20 years as ordained by the guidelines. The sentencing judge, a most able and experienced federal trial judge, recognized the unfairness of the fraud guidelines as applicable here. Nevertheless, I believe that we need to have an explanation under § 3553(a) in this and all similar cases where the guidelines would advise an unfair heavy sentence and therefore should not control the sentence. The sentencing judge committed procedural error by “failing to adequately explain the chosen sentence — ^including an explanation for any deviation from the Guidelines range.” See Gall, 552 U.S. at 51, 128 S.Ct. 586. For this reason, I would reverse Spencer’s sentence and remand the case for further explication of the reasons for the sentence under § 3553(a).
II. The Guidelines as a Questionable Starting Point
Since them adoption in 1987, many of the federal sentencing guidelines have proven unworkable, unfair, and have filled our federal prisons with defendants serving undeserved lengthy sentences, all at a higher cost to the government.[4]
*327 In many cases, the guidelines do not present a reasonable starting point for sentencing decisions. Sentencing judges are now free to ignore the guidelines and sentence on the § 3553(a) factors alone based on categorical disagreements with the guidelines. Spears v. United States, 555 U.S. 261, 264, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009) (per curiam). And district courts have exercised that authority in regard to several areas of the guidelines, including crack cocaine, receipt and possession of child pornography, and high-loss fraud sentences. See, e.g., Id. at 265-66, 129 S.Ct. 840 (“[District courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.”); United States v. Prosperi, 686 F.3d 32, 34 (1st Cir.2012) (affirming a sentence of 6 months home monitoring for fraud convictions where the guidelines range was 87-108 months); United States v. Dorvee, 616 F.3d 174, 182-88 (2d Cir. 2010) (vacating a within-guideline sentence for distribution of child pornography and detailing numerous issues with the relevant guidelines).
In high-loss fraud cases, sentences are significantly driven by the amount of loss: “along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant’s relative culpability and is a principal factor in determining the offense level under this guideline.” U.S. Sentencing Guidelines Manual § 2B1.1 cmt. background (2011). Linking sentence length to the amount of loss in fraud cases often leads to unfairly long sentences, just as the link between drug quantity or weight and sentence length does. See United States v. Santonelli, 128 F.3d 1233, 1238 n. 5 (8th Cir.1997) (“The amount of drugs attributed to an offender may have little relationship to an offender’s degree of criminality. For example, a drug courier may be held responsible for a heavy weight of drugs carried and receive a very long sentence for a relatively minor role in the drug crime.”). There is broad consensus among scholars that basing the fraud guidelines on the amount of loss “often results in widely unwarranted sentencing disparity and a lack of certainty in sentencing, and produces sentences grossly disproportional to the actual seriousness of the offense.” See Alan Ellis, John R. Steer & Mark H. Allenbaugh, At a “Loss" for Justice, 25 Crim. Just. 34, 35 (2011). Many sentencing judges have also come to the same conclusion: “[Sjince Booker, virtually every judge faced with a top-level corporate defendant in a very large fraud has concluded that sentences called for by the Guidelines were too high.” Frank O. Bowman, III, Sentencing High-Loss Corporate Insider Frauds After Booker, 20 Fed. Sent’g Rep. 167, 169 (2008).
Sentencing for some of these crimes has been complicated by Congress’s policy efforts. In these areas, Congress has stepped away from its reliance on the Sentencing Commission and “used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy....” U.S. Sent’g *328 Comm’n, Fifteen Years of Guidelines Sentencing 72-73 (2004). As I have noted before, “[w]hile Congress’s direct involvement in the guidelines is not inherently problematic, it is suspect when it lacks significant policy discussion and analysis.” United States v. Zauner, 688 F.3d 426, 431 (8th Cir.2012) (Bright, J., concurring). The creation of an independent, bipartisan commission was designed “to insulate sentencing policy, to some extent, from the political passions of the day” — “research and reason,” not politics, were to govern the guidelines. Richard P. Conaboy, The United States Sentencing Commission: A New Component in the Federal Criminal Justice System, 61 Fed. Probation 58, 62 (1997).
III. District Courts Should Justify Each Sentence Under § 3553(a)
It would seem from the nature of the criticism as well as reviewing the overall result of guidelines sentences, that the present guidelines system needs congressional review and drastic change. If we are to keep a system of sentencing guidelines, they must be modified to ensure basic fairness such as that envisioned in § 3553, which requires district courts to “impose a sentence sufficient, but not greater than necessary, to comply with the purposes” of sentencing. 18 U.S.C. § 3553(a). In the meantime, district courts have an obligation to impose fair sentences in criminal cases and appellate courts need to properly review a sentence when appealed.[5]
To ensure that criminal defendants receive fair sentences, this dissent urges that sentencing judges always engage in a meaningful analysis of the § 3553(a) factors — the process should not devolve to be rote, mechanical, and artificial. Whether imposing a sentence within, above, or below the guidelines, the touchstone should always be the standard in § 3553 of a sentence sufficient but not greater than necessary and judges should verify the sentence pursuant to § 3553(a), explaining for the record “(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed ... (6) the need to avoid unwarranted disparities.” Id.
I acknowledge that conducting a § 3553(a) analysis in every case may be more work for a sentencing judge. But this worthwhile endeavor could lead to great improvement in our current system. Now sentencing courts have virtually unlimited discretion because appeals courts such as the Eighth Circuit will uphold a sentence as long as the sentencing judge says nothing more than, “I have ... considered the other factors described in § 3553(a).... I find that the sentence imposed on [the defendant] is reasonable in light of the factors.” United States v. Hernandez, 518 F.3d 613, 616-17 (8th Cir. 2008) (upholding a sentence because the district court “expressly stated” it considered the § 3553(a) factors without further analysis); see also United States v. McGlothen, 556 F.3d 698, 702 (8th Cir. 2009) (“[T]here is no need to recite each § 3553 factor.”); United States v. Dieken, 432 F.3d 906 (8th Cir.2006) (“[W]e do not require a district court to categorically rehearse each of the section 3553(a) factors on the record.”). I strongly disagree with the comments stated above in these appellate cases.
IV. Conclusion
The sentencing judge was required to hand down a just, well-reasoned sentence, *329 and to do so in a fashion that demonstrated that the defendant received the individual consideration due to him under § 3553(a). I would reverse and remand to the district court for imposition of a sentence no higher than that already imposed, justified by reference to the § 3553(a) factors.
The sentence previously imposed may very well be a proper one. But the brief explanation in this case gives the appeals court little basis for a reasoned review.

. In addition to the 20 level enhancement for the amount of loss between $7 million and $20 million, Spencer received two levels for involving more than 10 victims, two levels for sophisticated means, two levels for deriving more than $1 million in gross receipts as a result of the offense, four levels for being an organizer and leader, and two levels for abusing a position of trust, for a total offense level of 39.

. See, e.g., Andrew Romano, Jim Webb’s Last Crusade, Newsweek, Sept. 19, 2011, at 50-53. In 1984, about 48% of federal defendants received a purely probationary sentence— that's nearly half. U.S. Sent’g Comm’n, 2 The Federal Sentencing Guidelines: A Report on the Operation of the Guidelines System and Short-Term Impacts on Disparity in Sentencing, Use of Incarceration, and Prosecutorial Discretion and Plea Bargaining 376 fig. 14 (1991). By 2002, only 9.1% of federal defendants received probationary sentences. In *327 the six years from 1984 to 1990, the average sentence imposed for all federal crimes increased from 24 months to 46 months. By 1992, the average sentence rose to nearly 67 months. U.S. Sent'g Comm’n, 1995 Annual Report 61 fig.F (1996), available at http:// www.ussc.gov/annrpt/1995/annual95.htm. These longer sentences make corrections a costly industry. Recent figures put corrections spending at $75 billion per year. John Schmitt, Kris Warner & Sarika Gupta, Ctr. for Econ. & Policy Research, The High Budgetary Cost of Incarceration 2 (2010), http:// www.cepr.net/documents/publications/ incarceration-2010-06.pdf. Nonviolent offenders currently account for over 60% of the prison and jail population in this country. Id. at 1.

. I also note that our system of sentencing may be improved through the use of sentencing councils, which I have discussed elsewhere. United States v. Ayala, 610 F.3d 1035, 1037-38 (8th Cir.2010) (Bright, J., concurring).