RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

           *Plaintiff-Appellee*,

    *v.*

JASON ZABEL,

           *Defendant-Appellant*.

No. 21-5766

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:20-cr-00022-1—Gregory N. Stivers, District Judge.

Decided and Filed:  May 23, 2022

Before:  SUTTON, Chief Judge; COLE and DONALD, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Frank W. Heft, Jr., Donald J. Meier, OFFICE OF THE FEDERAL DEFENDER, Louisville, Kentucky, for Appellant.  Monica Wheatley, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

BERNICE BOUIE DONALD, Circuit Judge. Mammoth Cave National Park in Kentucky is home to the world's longest known cave system, spanning more than 400 miles.[1]

───────────────

[1] *A Universe Beneath Mammoth Cave National Park*, NAT'L PARK FOUND, https://www.nationalparks.org/ connect/explore-parks/mammoth-cave-national-park (last visited May 13, 2022).

It is also where Jason Zabel committed abusive sexual contact against a female National Park Service employee—a crime for which he pled guilty and received a sentence of 18 months' imprisonment, followed by a life term of supervised release. On appeal, Zabel argues that the district court erred in denying his pre-guilty-plea motion to suppress incriminating statements he made to park rangers and that his sentence—both the term of incarceration and lifetime supervision—was procedurally and substantively unreasonable. He also contends that his statutory maximum term of supervised release violates the Eighth Amendment's prohibition against cruel and unusual punishment. For the following reasons, we affirm the district court's judgment and sentence.

## I.

On August 4, 2020, United States Park Ranger William Jaynes responded to an incident report at Mammoth Cave. When he arrived at the parking lot, he encountered a "slightly out of breath" female archaeology technician whose job was to monitor a trail restoration project inside the cave. She explained that Jason Zabel, one of the contractors working on the restoration project, had just pinned her against a wall and attempted to kiss her, grabbed her buttocks and breasts, and exposed his penis to her without her consent while she was leaving the cave. Armed with a description of Zabel's appearance and location, Ranger Jaynes and another park ranger who arrived on the scene entered the cave to find him.

The park rangers used an elevator to enter the cave and then walked approximately 25 minutes through its dark, narrow passages until they heard a group of workers speaking. Ranger Jaynes recorded the ensuing encounter from his body camera, which began with the park rangers introducing themselves to the group as law enforcement officers. They then asked: "Is there somebody here named Jason?" When Zabel raised his hand and confirmed his identity, the rangers said: "Come this way and chat with us for a few minutes."

Zabel followed the park rangers around the corner for less than 2 minutes where his coworkers could not hear their conversation. There, Zabel asked if he could use the restroom, and the park rangers replied: "Is there a bathroom around here?" Zabel stated there was a

restroom near the cave's entrance, but the rangers responded that "we're quite a ways from there" and "you're going to have to hold it for a few minutes."

Before the park rangers told Zabel about the accusations made against him, they explained that he was "not under arrest," that he was "free to go," that he had "no warrants," that he did not have to talk to them, that it was his "option" to do so, and that they would much rather he be quiet than lie to them. As an alternative to using the restroom near the cave's entrance, Zabel requested to walk to a nearby location where there were "a couple of empty buckets" because he was unsure how "much further than that [he'd] be able to make it." The park rangers responded "alright, first," and then proceeded to question Zabel about what happened with the female employee that morning.

Zabel made several incriminating statements during the interview, including that he had grabbed the female employee's butt in the elevator, asked to kiss her, and showed her his penis, during which he "may have been a little" erect or excited. The interview lasted less than 20 minutes, after which the park rangers told Zabel he would need to exit the cave with them. The rangers frisked Zabel for weapons and eventually allowed him to use the restroom, but they did not handcuff him until they reached the cave's surface due to the potentially dangerous nature of the walk out.

Zabel was later indicted for knowingly engaging in sexual contact with another person without that other person's permission, in violation of 18 U.S.C. § 2244(b). Zabel moved to suppress his incriminating statements, arguing that the park rangers improperly solicited those statements during a custodial interrogation without first advising him of his *Miranda*[2] rights. The magistrate judge recommended that the motion be denied in relevant part because Zabel was not "in custody" for purposes of *Miranda* until the park rangers patted him down and told him to exit the cave. The district court adopted the recommendation over Zabel's objections, agreeing that the park rangers were not required to provide Zabel the *Miranda* warnings because, under the totality of the circumstances, he was not in custody during the interview. After failing to

---

[2]A suspect's "*Miranda* rights" are: "the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

suppress his incriminating statements, Zabel pled guilty, without a plea agreement, to the single charge in the indictment, and admitted that he "intentionally grabbed the victim's buttocks and clothing with an intent to gratify his own sexual desire, all without the victim's consent."

On June 9, 2021, the probation office circulated a Presentence Investigation Report ("PSR") describing the offense conduct above based on Zabel's admissions and what the victim told Ranger Jaynes in the Mammoth Cave parking lot. On July 6, 2021, more than two weeks before Zabel's sentencing date, the probation office circulated a revised PSR that contained "more detailed information regarding the victim's account of the offense" than was included in the initial report, indictment, or factual basis presented at the guilty-plea hearing. Zabel's counsel indicated that he discussed these "previously unknown allegations" from the revised PSR with Zabel sometime on or before July 14, 2021, and that Zabel denied some of those allegations.

Based on the revised PSR, the government's July 12, 2021 sentencing memorandum sought an upward variance and an upward departure under U.S.S.G. § 5K2.8 for Extreme Conduct because Zabel's behavior was more egregious than what constitutes a typical abusive sexual contact. One day before the sentencing hearing, the government also sought to resolve the parties' remaining factual disputes by filing under seal Ranger Jaynes' written incident report and the victim's videotaped interview from August 5, 2020. The government simultaneously provided copies of these exhibits to Zabel's counsel, but technical issues prevented him from reviewing the victim's recorded statement before the hearing.

As the district court noted at the July 22, 2021 sentencing hearing, the victim's recorded statement did not contradict anything in the indictment or the factual basis for the guilty plea, but it certainly "paint[ed] a much more serious picture" of what happened in the cave. In it, the victim described in detail that as she was attempting to leave the cave, Zabel (who she had only seen in passing a few times) followed her, grabbed her arm, and made suggestive comments towards her, including that he wanted to see her in a bikini. When the victim made it halfway out of the cave, Zabel asked to touch her buttocks, asked where she lived, and said he wanted to wake up next to her in the morning. Zabel then ran ahead of the victim, and his persistent advances quickly turned physical. And before the victim could surface from the cave, Zabel had

cornered her against a wall, attempted to kiss her, placed his arm around her, grabbed her buttocks, breasts, and pubic area over her clothes, asked for oral sex, exposed his penis, and masturbated in front of her, all while making repeated sexual comments. She said she felt trapped in the cave and that Zabel's advances were "very unwanted." Ranger Jaynes included a summary of these statements in his written report.

Before proceeding with sentencing, the district court recessed for over an hour so that Zabel and his counsel could review the victim's video-recorded statements. The district court also provided Zabel an opportunity to testify if he disagreed with anything the victim said, but Zabel declined to do so. As a result, the district court relied on the victim's statements and sentenced Zabel to 18 months' imprisonment due to his background, the severity of his crime and its impact on the victim, the need to punish him for the offense, and the need to deter others from engaging in similar conduct. The criminal judgment reflects that this sentence was both an upwards departure under U.S.S.G. § 5K2.8 and an upwards variance.[3] The district court also imposed a life term of supervised release following Zabel's release from custody.

On appeal, Zabel now challenges: (1) the district court's denial of his pre-guilty-plea motion to suppress; (2) the procedural and substantive reasonableness of both his custodial sentence and term of supervised release; and (3) whether his lifetime supervision violates the Eighth Amendment's prohibition against cruel and unusual punishment. We address each of these arguments in turn.

## II.

### A. Motion to Suppress

Zabel appeals the district court's denial of his motion to suppress incriminating statements he made to park rangers while in Mammoth Cave, claiming he was in custody during

---

[3]A guidelines "departure" refers to "a sentence outside the advisory range or an assignment of a [different] criminal history category" that "results from the district court's application of a particular Guidelines provision, such as [§ 5K2.8]." *United States v. Grams*, 566 F.3d 683, 686-87 (6th Cir. 2009). A "variance" refers to "a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a)." *Id.* Although these are distinct concepts, "the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance[.]" *Id.*

their interview and was not informed of his *Miranda* rights.  As a preliminary matter, "[i]t is elemental that a guilty pleading defendant may not appeal an adverse pre-plea suppression of evidence motion unless he has preserved the right to do so by entering a conditional plea of guilty in compliance with [Federal Rule of Criminal Procedure] 11(a)(2)."  *United States v. Herrera*, 265 F.3d 349, 352 (6th Cir. 2001).  We have strictly construed Rule 11(a)(2)'s requirement "that a conditional guilty plea must be in a writing that reserves the right to appeal an earlier advance ruling on a pretrial motion and the writing must bear the government's consent."  *Id.*  The problem for Zabel is that he did not have a plea agreement in this case, and there is no evidence in the record of any writing preserving his right to appeal the district court's suppression ruling.  Instead, there is only the oral discussion that took place between one of his attorneys, Ms. Beyl, and the district court during the plea hearing:

> MS. BEYL:  Judge, just one thing.  I know that this is an open plea, so he reserves his right to appeal.  Mr. Meier did make note that there was a suppression issue that was decided, and Mr. Zabel lost, and that as part of his appellate rights, it would encompass that suppression issue.
>
> THE COURT:  All right.
>
> MS. BEYL:  So I just wanted to make sure that was clear for the record.
>
> THE COURT: All right.  Thank you.  Well, you do understand, Mr. Zabel, that you have a right to appeal -- you will have the right to appeal that suppression ruling notwithstanding your plea of guilty?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT: All right.  Thank you, Ms. Beyl, for making sure we got that on the record.

To be clear, this colloquy did not preserve Zabel's appellate rights because "neither [Zabel's] belief nor the district court's misstatement of the law are enough to trump the plain language of Rule 11" requiring a *writing*.  *Herrera*, 265 F.3d at 352.  Without such a writing, Zabel waived his right to appeal the district court's denial of his pre-plea motion to suppress.  *Id.*  Unlike in *Herrera*, however, the government has expressly declined to assert Zabel's waiver as an affirmative defense in this case.  And given that we are not required to enforce non-jurisdictional appellate waivers sua sponte, we have decided to consider Zabel's suppression challenge on the merits.  *See Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012).

Where, as here, the district court denies a defendant's motion to suppress, we review the court's findings of fact (viewed in the light most favorable to the government) for clear error and its conclusions of law de novo. *United States v. Young*, 847 F.3d 328, 342 (6th Cir. 2017) (citations omitted). Whether Zabel was "in custody" during the park rangers' interview is a mixed question of law and fact that we review de novo. *United States v. Levenderis*, 806 F.3d 390, 399 (6th Cir. 2015) (citation omitted).

The Fifth Amendment requires law enforcement officers to advise a person of their so-called *Miranda* rights, including the right to remain silent, before interrogating them while they are "in custody." *See United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009); *Miranda*, 384 U.S. at 444-45. Because there is no dispute that park rangers questioned Zabel without advising him of his *Miranda* rights, the only issue is whether Zabel was "in custody" when he made incriminating statements. In determining whether someone is "in custody" for purposes of *Miranda*, courts focus on "the objective circumstances of the interrogation" and "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Panak*, 552 F.3d at 465 (citation omitted). "The ultimate inquiry is whether, under the totality of the circumstances, the interviewee's freedom of movement was restrained to a degree associated with formal arrest." *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017) (citing *Panak*, 552 F.3d at 465). We have identified four, non-exhaustive factors to help guide this inquiry: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010).

Having reviewed the body camera footage of the encounter, we agree with the district court that the circumstances surrounding Zabel's interview would not lead a reasonable person to believe that he was in custody until the park rangers frisked him and informed him that he would be placed under arrest. To start, the location of the interview was inside Mammoth Cave—Zabel's place of employment for the prior 6-7 months. Zabel was also familiar with the exact location of the interview, as it was only a short walk from where he was speaking with his coworkers, and he knew about a couple of buckets that were nearby. We have noted that "police

questioning taking place in the suspect's . . . place of work is likely to be less intimidating than questioning taking place at the police station," *United States v. Protsman*, 74 F. App'x 529, 533 n.6 (6th Cir. 2003), where the goal is to "isolat[e] the suspect in unfamiliar surroundings 'for no purpose other than to subjugate the individual to the will of his examiner,'" *Beckwith v. United States*, 425 U.S. 341, 346 n.7 (1976) (quoting *Miranda*, 384 U.S. at 457). That the interview took place at Zabel's jobsite weighs against him being "in custody." *See United States v. Crossley*, 224 F.3d 847, 861-62 (6th Cir. 2000); *United States v. Mahan*, 190 F.3d 416, 421-22 (6th Cir. 1999).

The length and manner of the interview also weigh against a finding of custody. For example, the park rangers questioned Zabel for less than 20 minutes, and we have held that suspects questioned for longer lengths of time were not in custody. *See Levenderis*, 806 F.3d 390, 400 (6th Cir. 2015) (suspect not in custody during 30-minute interview and second, shorter interview); *see also Mahan*, 190 F.3d at 420 (suspect not in custody during 90-minute interview). The park rangers may have occasionally interrupted Zabel when he was speaking, but, as the district court noted, their questioning and demeanor was not hostile. At one point during the interview, a group of Zabel's coworkers walked by and the park rangers—at Zabel's request—even stopped asking questions until those coworkers were out of earshot. Consistent with the respectful nature of the interview, Zabel also asked if he could shake the park rangers' hands when the questioning was over.

Zabel nonetheless argues that he was in custody during the interview because the park rangers physically restrained his freedom of movement on several occasions. He claims that when the rangers first contacted him and said "come this way and chat with us for a few minutes," they limited his movement by ordering (not requesting) him to follow them to a new location away from his coworkers. While we agree with Zabel about what the rangers said, we also note that they did not place Zabel in handcuffs during the interview and they "at no time made any show of force or brandished a firearm or handcuffs, or any other equipment ordinarily associated with formal arrest or custody" until after he made incriminating statements. *See Mahan*, 190 F.3d at 422. It also appears that the rangers wanted to separate Zabel from his coworkers before asking questions due to the sensitive subject of the interview and to avoid

letting his coworkers hear about the victim's then-unsubstantiated allegations, not out of a desire to restrain him physically. *See United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998).

The strongest factor in Zabel's favor is that the park rangers did not immediately allow him to use the restroom upon request. It appears that when Zabel first asked to relieve himself, the rangers said "you're going to have to hold it for a few minutes" because the nearest restroom was 25-30 minutes away by the cave's entrance. But distance could not have been the only factor because they also ignored his second request to use the restroom in some nearby buckets. After being twice denied the ability to use the restroom, it is entirely possible that a reasonable person in Zabel's position may have felt temporarily restrained in their freedom of movement.

Although there are factors that both support and undermine the custodial nature of the interview, what undoubtedly tips the scales against Zabel is that the park rangers explicitly told him that he was not under arrest and did not have to talk to them *before* describing the allegations against him. No one factor is dispositive, but "[w]hether investigators inform a suspect that he is free to leave or to refuse to answer questions is the most important consideration in the *Miranda* custody analysis." *United States v. Martinez*, 795 F. App'x 367, 371 (6th Cir. 2019) (citing *Howes v. Fields*, 565 U.S. 499, 515 (2012)). In fact, we have held that when law enforcement officers provide clear assurances that a person is free to leave or terminate questioning, those assurances "likely would . . . guarantee[] the noncustodial nature" of the interview. *See Panak*, 552 F.3d at 468. Thus, even if a reasonable person in Zabel's position may have felt restrained when the park rangers denied his requests to use the restroom, their repeated assurances that he was free to leave and was not required to speak with them negated any notion he was restrained to a degree associated with formal arrest or that the interview was custodial in nature. *See Protsman*, 74 F. App'x at 535.

In sum, the totality of the circumstances indicate that Zabel was not "in custody" for purposes of *Miranda* when he made incriminating statements to park rangers before his formal arrest, and therefore the district court properly denied his motion to suppress.

**B. Reasonableness of Sentence**

Next, we address Zabel's challenges to his 18-month custodial sentence and life term of supervised release. We review a district court's chosen sentence for whether it is procedurally and substantively reasonable. *Young*, 847 F.3d at 370 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). A sentence is procedurally reasonable if the district court did not commit any significant procedural errors, such as failing to "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a),[4] refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall*, 552 U.S. at 51). Where, as here, the defendant failed to object after the district court pronounced the sentence and asked for any objections, we review the procedural reasonableness of the sentence only for plain error. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). To demonstrate plain error, the defendant-appellant must "prove: (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United*

---

[4]The § 3553(a) factors that district courts should consider when imposing a sentence are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

*States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015) (citing *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).

If we agree that the sentence is procedurally sound, we then consider whether the sentence is substantively reasonable and not "too long (if a defendant appeals) or too short (if the government appeals)." *Rayyan*, 885 F.3d at 442. "For a sentence to be substantively reasonable, 'it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a).'" *Young*, 847 F.3d at 371 (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). We review the substantive reasonableness of a sentence for abuse of discretion, with the ultimate inquiry being whether the district "court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Rayyan*, 885 F.3d at 442. In this context, our review is "highly deferential" because weighing sentencing factors "is a matter of reasoned discretion, not math." *Id.* An abuse of discretion exists only if we are "left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013)).

### 1. 18-Month Term of Imprisonment

*Procedural Reasonableness*. Zabel first argues that the district court committed procedural error by not adequately explaining why it imposed an 18-month, above-guidelines sentence, and by not considering any of the § 3553(a) factors except his age, the nature and circumstances of his offense, and the need for punishment. We have "held that although a sentence should reflect the considerations listed in § 3553(a), 'there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers.'" *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006) (quoting *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005)). Instead, the district court need only "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007) (citation omitted). And as explained above, we review Zabel's procedural-reasonableness challenges only for plain error.

Here, the district court accurately calculated the guidelines range and treated it as advisory by imposing a sentence above that range. It then explicitly addressed most of the § 3553(a) factors, including the "history and characteristics of the defendant," the "nature and circumstances of the crime," the need to "protect the public from Mr. Zabel," and the need "to deter others from engaging in this kind of conduct." *See* 18 U.S.C. § 3553(a)(1)-(2). Expounding on these factors, the district court further explained that Zabel's age and non-criminal background weighed in favor of a lower sentence, but the "paramount" need to punish his "incredibly outrageous conduct," "the profound impact on the victim," and the importance of deterring others from thinking his behavior "wasn't really a big deal" justified an above-guidelines sentence. It also noted that it would not impose a 24-month sentence—the statutory maximum—because Zabel "did not attempt to remove the victim's clothing" or "use[] actual force." "Taking all of these factors into account," the district court determined that "a sentence of 18 months' custody is sufficient but not greater than necessary to punish [Zabel] for his actions." On this record, we find that "the district court explained its reasoning to a sufficient degree to allow for meaningful appellate review—the touchstone of procedural reasonableness." *United States v. Zobel*, 696 F.3d 558, 569 (6th Cir. 2012) (citation and internal quotation marks omitted).

Zabel next argues that his above-guidelines sentence is procedurally unreasonable because the district court did not explain how his conduct was atypical for abusive sexual contact. This argument is misplaced because the district court clearly explained at the sentencing hearing that Zabel's conduct "is not within the heartland of abusive sexual contact" because, among other things, he made repeated and increasingly aggravated sexual advances "that went on and on and on in the cave, where [he and the victim were] alone and separated from society," with nowhere for the victim to run or call for help. The district court provided a similar explanation in its written statement of reasons. Whether the district court's explanation justified an 18-month sentence is a question for the *substantive* reasonableness inquiry. *United States v. Arnold*, 838 F. App'x 985, 988 (6th Cir. 2021).

Changing course slightly, Zabel complains that he was prejudiced and unfairly surprised when the district court relied on Ranger Jaynes' written report and the victim's recorded

statements—which were produced only one day before the sentencing hearing—to impose an upwards departure and variance.  A sentence may be procedurally unreasonable if "the facts or issues on which the district court relied to impose a variance came as a surprise and [the defendant's] presentation to the court was prejudiced by the surprise." *Coppenger*, 775 F.3d at 804 (citation omitted).  Here, there is no question that the district court relied on Ranger Jaynes' report and the victim's statement as important factors in imposing an above-guidelines sentence. However, a district court does not commit reversible procedural error if it relies on allegedly surprising facts that were "reasonably foreseeable," thus providing the defendant or his counsel "a meaningful opportunity to contest the veracity or relevance of the information." *See United States v. Hatcher*, 947 F.3d 383, 391 (6th Cir. 2020) (quoting *United States v. Fleming*, 894 F.3d 764, 769 (6th Cir. 2018)).  Zabel and his counsel could have reasonably anticipated that the victim's statements would be relevant and important considerations at sentencing, especially because they appeared in the July 6, 2021 revised PSR and were quoted extensively in the government's July 12, 2021 sentencing memorandum.  Zabel's counsel also discussed this information with Zabel more than one week before the sentencing hearing, and there is nothing suggesting that Zabel's counsel would have handled the sentencing hearing differently if he received the recorded statements earlier.  And even if Zabel disagreed with some of the statements, the district court's reliance on that information was not plain error because Zabel refused his opportunity to provide his version of events or challenge the victim's statements on the stand.  Accordingly, it was not procedurally unreasonable or surprising for the district court to rely on Ranger Jaynes' report and the victim's videotaped statements at sentencing.

Zabel also contends that the district court failed to comply with Federal Rule of Criminal Procedure 32(h) by not notifying him that it was considering an upward departure based on the victim's statements.  Rule 32(h) provides:

> [b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report *or in a party's prehearing submission*, the court must give the parties reasonable notice that it is contemplating such a departure.

Fed. R. Civ. P. 32(h) (emphasis added).**[5]** "Only 'reasonable notice' is required, and what constitutes reasonable notice will vary depending on the circumstances of the particular case." *United States v. Erpenbeck*, 532 F.3d 423, 443 (6th Cir. 2008) (citations omitted). It is true, as Zabel argues, that the PSR did not recommend a departure or above-guidelines sentence. But Rule 32(h) also explicitly refers to "a party's prehearing submission," and the government's prehearing sentencing memorandum put Zabel on notice that it was recommending an upwards departure under § 5K2.8 based, at least in part, on the victim's statements. Accordingly, the district court did not "depart from the applicable sentencing range on a ground not identified for departure," and therefore it had no independent duty under Rule 32(h) to provide Zabel reasonable notice that it was considering an above-guideline sentence. *See United States v. Quinlan*, 473 F.3d 273, 279-80 (6th Cir. 2007) (holding that the government satisfied the requirements of Rule 32(h) because its sentencing memorandum recommended an above-guidelines sentence).

In a final effort to demonstrate his sentence was procedurally unreasonable, Zabel makes some ancillary arguments that are foreclosed by binding Sixth Circuit precedent. For example, Zabel claims that the district court committed procedural error by not considering whether a Kentucky state court would have imposed a potentially lower sentence under Kentucky law. This ignores our well-settled holding that a district court commits reversible error and imposes a procedurally *unreasonable* sentence if it "consider[s] the defendant's likely state court sentence as a factor in determining his federal sentence." *United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007); *United States v. Boucher*, 937 F.3d 702, 712 (6th Cir. 2019). Zabel also argues that the district court erred by not considering collateral consequences of his sentence, including that he would have to register as a sex offender and face difficulties securing future employment and providing financial support to his family. Again, our precedent bars district courts from considering the collateral consequences of a defendant's conviction when determining an appropriate sentence in light of the § 3553(a) factors. *United States v. Musgrave*, 761 F.3d 602,

---

**[5]**Rule 32(h)'s notice requirement does not apply to variances. *Irizarry v. United States*, 553 U.S. 708, 714 (2008).

608 (6th Cir. 2014); *United States v. Adkins*, 744 F. App'x 292, 299-300 (6th Cir. 2018). For these reasons, we find that there was no plain error and Zabel's sentence was procedurally sound.

*Substantive Reasonableness*. Zabel also challenges the substantive reasonableness of his sentence for many of the same reasons he challenged the district court's procedures, namely that the district court (1) afforded too much weight to the need for punishment, (2) did not consider several § 3553(a) factors, and (3) imposed an arbitrary sentence by not considering state law or the collateral consequences of his conviction. We have already explained why his third argument is contrary to law, and we do not need to address his second argument here because "[t]he point [of substantive unreasonableness] is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness." *Rayyan*, 885 F.3d at 442. Instead, we must consider only whether the district court abused its discretion by placing unduly disproportionate weight on some of the § 3553(a) factors in imposing an above-guidelines sentence.

Unlike sentences falling within the guidelines range, a sentence outside the guidelines range is not presumed substantively reasonable. *Zobel*, 696 F.3d at 569 (citing *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)). Of course, that does not mean that an above-guidelines sentence is presumed *unreasonable*, it just means that the district court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. The larger the variance, the more significant the justification needs to be. *Id.* Moreover, even if one factor (here, punishment) appears to be the driving force behind the sentence, "[a] district court does not commit reversible error simply by attaching great weight to a single factor." *Zobel*, 696 F.3d at 571 (citations and internal quotation marks omitted). If the district court considered and weighed all relevant § 3553(a) factors, then the defendant bears "a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *Id.* (citation omitted).

In its statement of reasons, the district court provided the following justification for imposing a sentence that was 6 months (or 50 percent) more than the top of the guidelines range:

> The defendant's conduct occurred in an isolated location at the victim's place of work, a federal park. The sexual conduct itself was egregious. The defendant

made unwanted sexual advances towards the victim, a federal employee; assaulted the victim by grabbing the victim's buttock; and exposed his genitals and masturbated in front of the victim without consent. The defendant's conduct persisted. The defendant followed the victim and continued masturbating while the victim sought to remove himself/herself from the defendant. The event has caused long-term negative consequences for the victim at the victim's workplace and for the victim's career. A sentence within the advisory guideline range would depreciate the seriousness of the offense and the offense conduct, which is extreme. An upward departure/variance is warranted.

The district court's statement of reasons, combined with its explanation at the sentencing hearing, demonstrates that it considered all relevant § 3553(a) factors, attached significant but not unreasonable weight to punishment concerns, and imposed a modest above-guideline sentence to account for Zabel's extreme conduct and its long-lasting impact on the victim. We cannot say that was an abuse of discretion.

Accordingly, we will affirm Zabel's 18-month term of imprisonment.

### 2. Life Term of Supervised Release

*Procedural Reasonableness*. We now consider Zabel's argument that the district court committed a procedural error by not adequately explaining why it imposed a life term of supervised release. Zabel did not raise this objection at sentencing, so our review for procedural reasonableness is again limited to plain error.

There is no question that the district court had authority to impose a life term of supervised release. "Congress insists that lifetime supervision be available to courts in sentencing sexual offenders," like Zabel. *United States v. Kennedy*, 499 F.3d 547, 553 (6th Cir. 2007). We see this insistence in 18 U.S.C. § 3583(k), which provides that "the authorized term of supervised release for any offense under . . . [§] 2244 . . . is any term of years not less than 5, or life." We also see it reflected in the guidelines, which both authorize lifetime supervision and recommend that district courts impose the maximum term of supervised release for sex offenders. *See* U.S.S.G. § 5D1.2(b)(2). The parties do not dispute that a life term falls within the relevant range here.

"Although the Guidelines counsel a lifetime of supervision, the district court still had to explain why it chose this term." *United States v. Babcock*, 753 F.3d 587, 593 (6th Cir. 2014) (citing *United States v. Inman*, 666 F.3d 1001, 1004 (6th Cir. 2012) (per curiam)). We acknowledge that the district court's stated reasons for imposing lifetime supervision were sparse. Indeed, the entirety of the district court's oral explanation at the sentencing hearing was as follows:

> Upon release from imprisonment, [Zabel] should be placed on supervised release for the remainder of his life. Frankly, because I don't understand how this could have happened, I don't see what in his background caused that to happen, I'm not comfortable giving him a term of supervision less than life.

Nor did the district court elaborate in its written statement of reasons why lifetime supervision, as opposed to a lesser amount of time, was appropriate. But the district court was not required to provide an "extensive explanation" in this case "[b]ecause the life term of supervised release was consistent with guideline recommendations." *United States v. Harmon*, 593 F. App'x 455, 468 (6th Cir. 2014) (citing *Rita*, 551 U.S. at 346). What matters here is that the district court fully explained why the § 3553(a) factors supported an 18-month, above-guideline sentence. *See Babcock*, 753 F.3d 593. "In outlining its reasons for imposing the sentence of incarceration . . . the district court was also outlining the reasons supporting the [term] of supervised release." *Zobel*, 696 F.3d at 572; *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007) (affirming lifetime supervision as procedurally reasonable because "the district court . . . engaged in a single consideration of the sentencing factors, which embraced both the incarceration sentence and the supervised release term"). It is worth repeating that procedural reasonableness simply requires the district court to consider the relevant § 3553(a) factors and explain its sentencing decisions in a way that permits "reasonable appellate review." *Zobel*, 696 F.3d at 569. The district court complied with those requirements here.

Zabel's procedural-reasonableness challenge relies heavily on our decision in *Inman*, where we held that the district court committed plain error by not explaining why it imposed a life term of supervised release over the parties' joint recommendation for a ten-year term. *Inman*, 666 F.3d at 1004. The district court in that case also imposed several burdensome conditions of supervised release without explanation or factual support—an issue that does not

apply here. *Id.* at 1004-06. In *Inman*, we also determined that the district court's error affected the defendant's substantial rights "[b]ecause both the length of supervised release and the special conditions were likely more severe than if the district court followed the correct procedure." *Id.* at 1007. That makes this case readily distinguishable because Zabel does not even mention that he would have likely received a lesser term of supervised release if the district court's allegedly inadequate explanation—to the extent it was deficient at all—were more substantial. Nor would he succeed on that argument because the district court clearly demonstrated familiarity with the facts, the record evidence, the parties' arguments, the revised PSR, and Zabel's criminal background (or lack thereof), and fully considered that information in sentencing Zabel to a life term of supervised release. *Harmon*, 593 F. App'x at 469. Because Zabel has not met his burden to show that either his rights or the fairness of the proceedings were affected by the district court's brief explanation, we do not find that the district court committed plain error in this case.

*Substantive Reasonableness.* Zabel also argues that his term of supervised release is substantively unreasonable because it is greater than necessary to comply with the purposes of the sentencing laws and creates unwarranted disparities among offenders convicted of abusive sexual contact. Zabel's challenge faces two immediate hurdles. First, because lifetime supervision is a within-guidelines sentence, we are entitled to afford that sentence a rebuttable presumption of reasonableness. *Bolds*, 511 F.3d at 581 (citations omitted). Second, and more generally, we must defer to the district court's sentence if it is justified by the relevant § 3553(a) factors, even if we would not have imposed the same sentence. *United States v. Herrera-Zuniga*, 571 F.3d 568, 591 (6th Cir. 2009) (citations omitted).

Applying this highly deferential standard of review, we do not find that the district court abused its discretion in imposing a life term of supervised release. As we stated above, the district court fully considered and discussed the relevant § 3553(a) factors, focusing on the need to punish Zabel for his "incredibly outrageous conduct," the need to deter others from engaging in similar behavior, and the lasting and profound impact suffered by the victim. The court had difficulty understanding why Zabel—who is in his thirties, had a robust employment history, has been married for twelve years, has multiple children, and has no prior background of sexual or

violent offenses—would have engaged in such serious conduct.  While Zabel argues that there is nothing in his background suggesting he will commit any future offenses, there is also nothing in his background explaining *why* he isolated a female employee in a cave and committed repeated, abusive sexual contact.  The district court, therefore, properly exercised its discretion in imposing a life term of supervision, which included a special condition preventing him from ever contacting the victim again.

To Zabel's disparity argument, one of the § 3553(a) factors is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of *similar* conduct[.]"  18 U.S.C. § 3553(a)(6) (emphasis added).  Zabel argues that his lifetime supervised release is unreasonable because such a lengthy term should be reserved only for defendants convicted of sexual offenses against children.  But while life terms of supervised release may *also* be appropriate for child-related offenses, the need to avoid unwarranted sentence disparities in this case refers to disparities between those convicted of abusive sexual contact under § 2244(b).  Aside from citing some general statistics regarding the length of supervised release for those convicted of "sexual abuse," Zabel has not identified any individuals who engaged in similarly egregious conduct, with backgrounds as disconnected as his, that received more lenient sentences. *See United States v. Richardson*, 349 F. App'x 38, 43 (6th Cir. 2009).  Accordingly, we defer to the district court's reasoned discretion that Zabel's life term of supervision will not create unwarranted sentence disparities amongst other similarly-situated defendants.

Although we will affirm Zabel's supervised release term as both procedurally and substantively reasonable, that does not mean Zabel is left without any recourse for the remainder of his natural life.  Assuming Zabel rehabilitates himself, complies with his supervised release conditions, and exhibits conduct commensurate with those who can exist in society without sexually abusing others or committing crimes, he may be eligible for a modification of his supervised release term under 18 U.S.C. § 3583(e)(1).  That section provides that the district court may, after considering the § 3553(a) factors, "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, . . . if it is satisfied that such action is warranted by the conduct of the defendant released

and the interest of justice." 18 U.S.C. § 3583(e)(1). Of course, we express no opinion regarding whether Zabel will ever qualify for a modification of his release, we just note that he may have that potential procedural option sometime in the future.

### C.  Eighth Amendment

Last, Zabel argues that his life term of supervised release is "grossly disproportionate" to the crime for which he pled guilty, and therefore, his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. Zabel did not raise this challenge before the district court, so we review for plain error whether his sentence is cruel and unusual. *See* Fed. R. Crim. P. 52(b); *Young*, 847 F.3d at 363.

A sentence violates the Eighth Amendment only if it is "extreme" and "grossly disproportionate to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J. concurring in part and concurring in the judgment). To determine whether a sentence violates the Eighth Amendment, the Sixth Circuit has adopted the "narrow proportionality principle" set forth by a plurality of the Supreme Court in *Harmelin*. *See United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003). Consequently, we have recognized that the Eighth Amendment "does not require strict proportionality between crime and sentence" and instead "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 473.

Given these standards, "[a] defendant challenging [a] sentence under the Eighth Amendment has a tremendously difficult burden to meet." *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011). And this tremendous burden becomes even heavier if the challenged sentence falls within the relevant statutory range, as we must "grant substantial deference to the . . . legislatures . . . in determining the types and limits of punishments for crimes." *Layne*, 324 F.3d at 473. Practically speaking, "[a] sentence within the maximum set by statute generally does not constitute cruel and unusual punishment." *Id.* (quoting *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).

For the same reasons that Zabel's life term of supervised release is substantively reasonable, it is also constitutional under the Eighth Amendment. Sure, Zabel received a stiff, statutory maximum term of supervised release for his conviction, but that does not make his

sentence unconstitutional. Affording substantial deference to Congress' decision and guided by plain-error review, we do not find that Zabel's lifetime supervision is so extreme and grossly disproportionate to his conviction that it violates the Eighth Amendment.

**III.**

For the foregoing reasons, we **AFFIRM** Zabel's sentence and the district court's denial of his motion to suppress.