NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0448n.06

Case No. 23-1361

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 16, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| ELMER RODRIGO CAMEL-CHILEL, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

Before: GIBBONS, BUSH, and DAVIS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Elmer Camel-Chilel pled guilty to a one-count indictment charging him with illegal reentry. At sentencing, the district court imposed a within-Guidelines sentence of fifteen months' imprisonment. Camel-Chilel now appeals that sentence as procedurally unreasonable, arguing that the district court failed to consider a principal argument in his motion for a downward variance. Because the record fails to support Camel-Chilel's argument, we affirm.

I.

Elmer Camel-Chilel, a thirty-three-year-old Guatemalan national, first entered the United States without authorization as a teenager. By his twenty-eighth birthday, Camel-Chilel had accumulated four convictions for illegal entry or reentry and had been removed to Guatemala no fewer than eight times. During that same interval, Camel-Chilel was also convicted in Michigan state court — first on domestic violence charges and later for operating a motor vehicle under the

influence and failing to stop at the scene of an accident. Immigration officials last removed Camel-Chilel from the United States in October 2018.

Camel-Chilel's most recent encounter with state law enforcement — which precipitated the immigration offense underlying this appeal — occurred in October 2022, when deputies of the Allegan County, Michigan, Sheriff's Department arrested Camel-Chilel for again driving under the influence. After fingerprint analysis revealed Camel-Chilel's immigration status, a federal grand jury in the Western District of Michigan returned a one-count indictment against Camel-Chilel for illegal reentry subsequent to a felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1). Camel-Chilel was transferred to ICE custody in late October 2022, and he was released shortly thereafter on a personal recognizance bond.

Camel-Chilel pled guilty before a United States Magistrate Judge in mid-December 2022, and the district court subsequently adopted the magistrate's report and recommendation accepting the guilty plea. The court scheduled sentencing for April 2023, and Camel-Chilel remained on bond in the interim. Apart from failing to report to pretrial services within twenty-four hours of his release from ICE custody, a violation for which the probation office did not recommend any action, Camel-Chilel fully complied with the conditions set forth in his appearance bond.

In advance of sentencing, Camel-Chilel moved for a downward variance to a strictly probationary sentence. Although he conceded that his non-immigration-related criminal history "warrant[ed] concern," Camel-Chilel attributed his prior immigration violations to a "fundamental lack of understanding of the immigration process." DE 40, Def.'s Sentencing Mem., Page ID 187–88. Camel-Chilel then contrasted his more distant criminal history with his conduct since his October 2022 arrest — particularly his compliance with federal bond conditions and his dutiful appearance at "court dates in multiple jurisdictions." *Id.* at 188. Given this newfound "respect for

the law" and the inevitability of deportation (irrespective of a custodial or non-custodial sentence), Camel-Chilel argued that probation would prove sufficient, but not greater than necessary, to serve § 3553(a)'s deterrence and incapacitation goals. *Id.* at 187–89.

The government opposed Camel-Chilel's motion as "untimely"[1] and "meritless," arguing that the rewards that Camel-Chilel had earned through compliance with his bond conditions were (1) continued presentence release and (2) eligibility for a reduction of his offense level pursuant to U.S.S.G. § 3E1.1. DE 42, Gov't's Resp., Page ID 196–97. Nothing in the § 3553(a) factors, it argued, suggested that compliance with conditions of presentence release could serve as the basis for a downward variance. The government therefore asked for a sentence within the Guidelines' advisory range.

During the April 2023 sentencing hearing, the district court first summarized its understanding of the offense conduct. The court then asked counsel for both parties whether either maintained any objections to the factual recitation in the presentence report, to which both responded in the negative. The court next announced its calculation of the Guidelines range, which aligned with the probation officer's calculation of fifteen to twenty-one months' imprisonment. Neither counsel for the government nor counsel for Camel-Chilel objected to the calculation.

Camel-Chilel and his counsel then addressed the court. Counsel reiterated Camel-Chilel's position that he had "demonstrated a renewed or new respect for the law" by virtue of satisfying his bond requirements, attending appointments with ICE officials, and pleading guilty in his state

---

[1] The district court did not address the government's timeliness argument during the sentencing hearing, and the government has not raised it before this court. In any event, we find adequate support in the record for the timeliness of Camel-Chilel's motion, as Camel-Chilel submitted his motion within the timeline mandated by the version of the Western District of Michigan's Local Rules in effect at the time he pled guilty. DE 43, Def.'s Reply Br., Page ID 198–99; Admin Order No. 22-RL-079, at 1 (W.D. Mich. Sept. 21, 2022).

DUI prosecution, all of which merited a downward variance to a sentence of probation. DE 49, Sentencing Tr., Page ID 218–20. During his allocution, Camel-Chilel asked the court to allow him to remain in the United States.

The court then fielded argument from the government, which reiterated its position that Camel-Chilel's compliance with his bond conditions did not constitute grounds for a downward variance. Again, the government asked for a within-Guidelines sentence.

Finally, the district court weighed the § 3553(a) factors, first noting that Camel-Chilel's pattern of repeated unlawful entries contributed "significantly" to the seriousness of the offense. *Id.* at 224. Regarding Camel-Chilel's history and characteristics, the court acknowledged that Camel-Chilel's employer spoke highly of him, and the court likewise recognized that Guatemalan immigrants to the United States have rightfully earned a reputation for a strong work ethic and a commitment to returning money to their families abroad. The court again observed, however, that Camel-Chilel's failure to recognize the futility in repeated unlawful border crossings weighed against him. The court also made note of Camel-Chilel's criminal history category of IV, which proved "somewhat unusual in cases involving felony reentry." *Id.* at 226 (highlighting that this factor drives the imposition of a sentence within the guideline range). The court went on to discuss just punishment and respect for the law, observing that these considerations played an outsized role in its analysis when confronted with repeat offenders.

Towards the end of its discussion, the court spoke directly to the points raised in Camel-Chilel's motion for a downward variance. Notwithstanding Camel-Chilel's contention that he possessed a newfound respect of the law, the court found that his pleas to remain in the United States revealed that Camel-Chilel remained ignorant of applicable immigration law. To the court's mind, Camel-Chilel's continued entreaties to remain stateside indicated a "desire[] to stay in the

United States at any cost" and "for any reason." *Id.* The court thus discounted the value of Camel-Chilel's "good conduct" while out on bond, finding that further "specific deterrence" proved necessary. *Id.* at 225–26. In light of Camel-Chilel's unwavering desire to return, the court noted that the inevitability of deportation also amounted to "a double-edged sword," as Camel-Chilel's past conduct made clear that "when he has been deported . . . he just comes right back." *Id.* at 226.

Based on its discussion of the § 3553(a) factors, the district court then sentenced Camel-Chilel to fifteen months' imprisonment — the bottom end of the Guidelines' advisory range. When asked by the court, neither party voiced a legal objection to the sentence imposed outside of those already on the record. Camel-Chilel timely appealed.

## II.

On appeal, Camel-Chilel challenges his sentence as procedurally unreasonable. This court reviews procedural sentencing challenges under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 52 (2007). Examples of procedural error include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Adkins*, 729 F.3d 559, 563 (6th Cir. 2013) (alteration in original) (quoting *Gall*, 552 U.S. at 51). Sentences within the applicable Guidelines range enjoy a presumption of reasonableness, *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008), and to prevail under the abuse of discretion standard, a defendant's argument must go beyond "asserti[ng] that the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

III.

Camel-Chilel claims that the district court procedurally erred by failing to address the principal argument raised in his motion for a downward variance. That is, Camel-Chilel contends that because his conduct on presentence release constitutes a "legitimate sentencing consideration," the district court's failure to consider his "exemplary" presentence performance warrants vacating the sentence as procedurally unsound. CA6 R. 12, Appellant Br., at 10, 14. Camel-Chilel's argument lacks any basis in the record, however, and we therefore affirm.

As the government correctly notes, Camel-Chilel failed to object when the district court pronounced his sentence and solicited objections. We therefore "review the procedural reasonableness of the sentence only for plain error." *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022). To demonstrate plain error, Camel-Chilel must show: "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quoting *United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015)).

Camel-Chilel's argument fails at the first step of the plain error analysis, as the alleged error that he identifies in the district court's fashioning of his sentence did not in fact occur. While Camel-Chilel contends that the district court "failed to consider" whether his presentence conduct warranted a downward variance, even a cursory review of the sentencing transcript belies that contention. CA6 R. 12, Appellant Br., at 14. Indeed, the district court explicitly addressed Camel-Chilel's argument in the latter half of its § 3553(a) discussion, noting that despite Camel-Chilel's contention that his "good conduct" evidenced a renewed "respect [for] the law," the court harbored serious doubts about the value of such conduct since Camel-Chilel continued to express a desire

to remain in the United States.  DE 49, Sentencing Tr., Page ID 225–26.  That unwavering desire, considered alongside Camel-Chilel's "repeated return [to the United States] after deportation or removal," led the district court to conclude that Camel-Chilel wished to stay in the United States "at any cost."  *Id.*  And when weighed against these countervailing considerations, the court concluded that Camel-Chilel's compliance with the imposed conditions of presentence release simply did not control the sentencing decision.  *Id.*

The above weighing of counterbalancing facts rests at the heart of the district court's broad discretion at sentencing.  *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) ("In all cases, this circuit gives sentencing courts broad discretion to fashion individualized, fact-driven sentences without interference from appellate courts.").  And a defendant-appellant does not plausibly argue procedural unreasonableness where he simply disagrees with the relative weights that the district court assigned to various facts considered.  *See id*. at 707.  Moreover, the district court need not, as Camel-Chilel appears to contend, invoke a defendant's arguments in support of a downward variance by using the exact same terms that the defendant himself used to be deemed to have considered those arguments.  *Cf.  United States v. Krupa*, 2021 WL 4860153, at \*3 (6th Cir. Oct. 19, 2021) (noting that the sentencing court "need not, however, engage in a 'ritualistic incantation' or 'make specific findings relating to each of the factors considered'" to survive a challenge for procedural unreasonableness (quoting *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999))).  Although the district court did not recite Camel-Chilel's argument verbatim from his motion papers, the sentencing transcript makes clear that the court knew of the argument,

considered it, and in turn rejected it.[2]  That much proves sufficient to disabuse Camel-Chilel's

suggestion of procedural unreasonableness.  *See Zabel*, 35 F.4th at 505 (noting that to survive a

challenge of procedural unreasonableness, "the district court need only 'set forth enough to satisfy

the appellate court that [it] has considered the parties' arguments and has a reasoned basis for

exercising [its] own legal decisionmaking authority" (quoting *Rita v. United States*, 551 U.S. 338,

356 (2007))).

Camel-Chilel has not shown that a procedural error in fact occurred.  Accordingly,

Camel-Chilel cannot demonstrate plain error, and we in turn cannot say that the district court

abused its discretion in imposing a sentence of fifteen months' imprisonment.

IV.

For the foregoing reasons, we affirm Camel-Chilel's sentence.

---

[2] The district court's explicit discussion of Camel-Chilel's variance motion dispels any notion that the court failed to consider Camel-Chilel's conduct while on presentence release:

> [Defense counsel] says that — that Mr. Camel-Chilel now does respect the law, but it seems to me that he still doesn't really understand the law that is applicable here.
>
> The issue also of specific deterrence to criminal conduct is important in this case for two reasons really.  One is [Camel-Chilel]'s repeated return after deportation or removal, and two, his expression here this morning of his desire to stay in the United States, and I think the unspoken part of that is that he desires to stay in the United States at any cost, at any — for any reason.
>
> So [defense counsel] makes his argument for a variance based on good conduct and the fact that regardless of the sentence [Camel-Chilel] will be deported, but I would point out that that is kind of a double-edged sword, because we know that when [Camel-Chilel] has been deported in the past he just comes right back.
>
> I would also point out that Mr. Camel-Chilel's criminal history is at a criminal history category IV based on nine criminal history points, and that is actually somewhat unusual in cases involving felony reentry, and I think that's another factor to be taken into account, and it certainly is a factor that drives the advisory Guidelines range for custody.

DE 49, Sentencing Tr., Page ID 225–26.