NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0017n.06

Case No. 24-5982

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 08, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| KENDRICK HOLLAND, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | OPINION |

Before: McKEAGUE, GRIFFIN, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Kendrick Holland pled guilty to robbing a U.S. postal worker at gunpoint. At sentencing, the district court varied upward by six months to account for the premeditated nature of the robbery and its severe psychological effects on the victim. Holland now argues that those considerations were impermissible. Seeing no error, we affirm.

I.

One Wednesday morning, a mail carrier for the U.S. Postal Service parked his truck on a quiet street near an elementary school. It seemed like just another day doing a job he took "great pride in" and "enjoy[ed] . . . immensely." R. 166, Pg. ID 721–22. After over two decades of military service, the mail carrier liked supporting his family and serving his community by doing a job that made him feel safe.

Kendrick Holland changed all that. Shortly after the mail carrier parked his truck along his route, Holland and two friends drove up behind him. Holland and one of his friends exited the car

and approached the mail carrier. As the pair came closer, the mail carrier observed that both were wearing ski masks and carrying firearms.

Holland started off with a threat: "We know you have a family and you don't want to get hurt." *Id.* at 722. The mail carrier looked at Holland's gun, stared into his eyes, and concluded "his life was being threatened." R. 44, Pg. ID 70. Holland's associate then demanded the mail carrier's "arrow key," a universal postal key that unlocks boxes on the carrier's route. The mail carrier handed it over, and the robbers drove away—but not before the quick-thinking mail carrier memorized parts of their license plate.

Police tracked the car to an apartment building. In the apartment and car, they found the arrow key, two ski masks, two loaded handguns, an assault rifle with a magazine, and two stolen mail parcels. So they arrested Holland and his associates.

A federal grand jury indicted Holland for robbing a postal employee and brandishing a firearm during a crime of violence. 18 U.S.C. § 2114(a); *id.* § 924(c)(1)(A)(ii). Holland pled guilty, confessing that he participated in the robbery so that he could steal mail containing checks and fraudulently cash them. To reward his cooperation, the government dismissed the brandishing charge, which would have lengthened Holland's sentence by seven years.

At Holland's sentencing, the mail carrier testified that the robbery had long-term psychological impacts on his personal and professional life. He recounted, "I do not have that safety or sense of security anymore when I go to work." R. 166, Pg. ID 722. He likened his job to prison, explaining that he was "going to have to serve . . . another eight-year sentence till I retire." *Id.* He also testified that the robbery undid progress he'd made in combating the post-traumatic stress disorder he developed while serving in the military. He experienced "sleepless nights, intense anger issues, and family disruptions" because Holland's threat about his family

"still echoe[d] in [his] mind." *Id.* Ultimately, the robbery shook his faith in the court system and his "confidence in society." *Id*. at 723.

The United States Probation Office calculated a recommended range under the United States Sentencing Guidelines of 63 to 78 months' imprisonment for Holland. The government requested an upward variance to "eight years imprisonment, a sentence that would roughly coincide with the victim's time before he can retire." R. 111, Pg. ID 506. The government emphasized that this sentence would account for the severity of the crime and its premeditated nature.

Holland countered with a request for between 43 to 63 months' imprisonment. He based this request on his status as a first-time offender, his youth, his drug addiction, and his cooperation with the government. At sentencing, Holland apologized to the victim and expressed remorse for his crime.

The district court ultimately imposed a sentence of 84 months' imprisonment—a six-month upward variance from the recommended range. It emphasized two reasons for its decision: First, the crime was a "premeditated, preplanned act of violence that will have and is already having very serious consequences on the victim." R. 166, Pg. ID 791. Second, a sentence within the Guidelines range would "create[] a disparity" between Holland and his codefendants. *Id.*

At the conclusion of the hearing, the district court asked if Holland had any objections to the sentence. Holland didn't raise any. But he then appealed.

## II.

On appeal, Holland argues that the district court erred by considering impermissible evidence in determining his sentence, including a fast-food receipt and parts of the victim's impact statement.

When, as here, the district court asked for any objections and the defendant failed to object, we review a sentence's procedural and substantive reasonableness for plain error. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Under this demanding standard, Holland must identify an error that was "obvious or clear" and affected both his "substantial rights" and the proceeding's "fairness, integrity, or public reputation." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (cleaned up). Holland doesn't identify any.

A.

Holland first argues that his sentence was "procedurally unreasonable" because the district court varied upward based on "inadequately proved evidence, namely, a fast-food receipt." Appellant's Br. at 10.

At sentencing, the government referenced a receipt showing that Holland and his two associates had gone to a fast-food restaurant shortly before the robbery. The government argued that this shared meal proved the crime was premeditated, indicating that all three men were "comfortable" enough with the plan to get "a little snack" before the robbery. R. 166, Pg. ID 736. The district court agreed, stating, "At first I didn't know what to make of the location of this fast food wrapper or this receipt. But I understand the point that [the government] is making there." *Id*. at 780. Relying on the receipt, it inferred that the robbery wasn't "a situation where two or three young men got drunk or high on drugs . . . . This was planned. This was premeditated." *Id*. at 780–81.

For starters, Holland didn't argue—either before the district court or on appeal—that the crime was anything other than premeditated. And he doesn't contest—then or now—that the fast-food receipt shows that Holland had a meal with his associates shortly before the crime. So it's

difficult to understand how the district court could have erred by reaching an uncontested conclusion based on uncontested evidence.

What's more, the fast-food receipt wasn't the only piece of evidence that the crime was premeditated. As Holland himself admitted, he had traveled over 100 miles "just to do the robbery." *Id*. at 767. During that trip, he learned that the robbery would involve firearms. These facts, not the receipt, were the primary reasons the district court found that the robbery was premeditated. This evidence provided ample basis for the district court to conclude that Holland planned the crime in advance. *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) (discussing the preponderance standard). In short, the district court didn't err, let alone plainly err, in concluding that Holland had preplanned this crime.

B.

At sentencing, Holland's victim testified that the robbery had long-term effects on his mental health, sense of security at work, and faith in the justice system. Holland now argues that the district court impermissibly considered the victim's psychological injuries and retirement date when determining his sentence. Neither consideration was error.

Holland frames this argument as a challenge to the substantive reasonableness of his sentence. *See* Appellant's Br. at 14 (citing *United States v. Conaster*, 514 F.3d 508, 520 (6th Cir. 2008)). But "consideration of an impermissible factor is more properly considered a procedural, not substantive, error." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (citation omitted). Since Holland didn't object below, we again review his procedural challenge for plain error. *Vonner*, 516 F.3d at 391–92.

Start with the fact that both the Crime Victims' Rights Act and the Federal Rules of Criminal Procedure *require* district courts to permit victims to be heard at sentencing. 18 U.S.C.

§ 3771(a)(4); Fed. R. Crim. P. 60(a)(3); *id.* 32(i)(4)(B); *see also id.* 32(d)(2)(B) (requiring "psychological" impacts on victims to be recorded in the defendant's presentence investigation report); *United States v. Zabel*, 35 F.4th 493, 506 (6th Cir. 2022) (considering victim injuries included in the government's sentencing memorandum). In addition, district courts must consider factors including the defendant's characteristics, the nature and circumstances of his crime, the need for deterrence, and the need to protect the public from the defendant. *See* 18 U.S.C. § 3553(a)(1)–(2). As we've repeatedly held, the physical, emotional, and psychological effects of the defendant's conduct on the victim may factor into the district court's assessment of these factors. *See, e.g.*, *Zabel*, 35 F.4th at 510 (considering the "profound impact suffered by the victim"); *United States v. Vowell*, 516 F.3d 503, 508, 512 (6th Cir. 2008) (considering "serious psychological and emotional damage as a result of the defendant's conduct").

Holland observes that the district court didn't follow the Sixth Circuit's procedure to depart upward under U.S.S.G. § 5K2.3, which applies to crimes inflicting severe psychological injuries. *See* Appellant's Br. at 19–22; U.S.S.G. § 5K2.3 (repealed Nov. 1, 2025). But the district court sought to vary upward, not depart, so § 5K2.3 isn't relevant. *See United States v. Denny*, 653 F.3d 415, 420-21 (6th Cir. 2011) (explaining the difference between variance and departure). If anything, § 5K2.3 shows that psychological impact is a relevant consideration for district courts.

Holland next offers a variation of this argument: The district court erred by considering the victim's testimony that he had eight years until retirement when sentencing Holland to seven years in prison. According to Holland, "Poetic reciprocation—eight years bad feelings for me, eight years in prison for you—is not an element . . . for calculating terms of imprisonment." Appellant's Br. at 17. Holland didn't raise this challenge before the district court, so we again review for plain error.

At sentencing, the government and victim requested that Holland be sentenced to eight years' imprisonment. As the government explained the request, that sentence "would roughly coincide with the victim's time before he can retire." R. 111, Pg. ID 506; *see also* R. 166, Pg. ID 746. The district court acknowledged it "heard the victim this morning say that he's going to feel like he is in prison for the next eight years until he can retire from his job. . . . I think in his mind it sounds like he thinks he will suffer those consequences for at least the eight years." R. 166, Pg. ID 778–79. The district court then turned to other factors—including the use of firearms and proximity to elementary schools—that made the crime a "[s]erious, serious offense." *Id*. at 780.

The district court didn't err by mentioning the victim's retirement date. First and foremost, Holland was sentenced to seven years' imprisonment, not eight. The district court reached this sentence based on detailed consideration of the factors in § 3553(a). Among other factors, the district court discussed the severity of the crime, the need for deterrence, potential disparities with Holland's codefendants, and Holland's mitigating characteristics. As part of this inquiry, it was permitted to consider both the government's and the victim's requested sentence. The district court was likewise allowed to assess the long-term consequences of the crime on the victim. So the district court didn't err by correctly calculating and carefully explaining an individualized sentence.

\* \* \*

We affirm.